WILLIAM M. KENT ET AL., APPELLEES, V. DAIRYLAND MUTUAL INSURANCE COMPANY, APPELLANT.

131 N. W. 2d 146

Filed October 30, 1964. No. 35707.

Tye, Worlock, Knapp & Tye, for appellant.

Dier & Ross, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. SMITH, District Judge.

MESSMORE, J.

This case arises from a contract of insurance on a 1952 Ford two-door sedan owned by the plaintiffs, for damages and attorneys' fees as a result of an accident occurring on February 18, 1960, at approximately 1:30 p.m. The case was submitted to the county court of Buffalo County and tried to the court, resulting in a finding for the plaintiffs under a statement of facts stipulated to by the parties. The county court rendered judgment in the amount of $397.95, allowed attorneys' fees in the amount of $50 to be charged as costs for the plaintiffs' attorneys, and other costs in the amount of $10.10, for a total of $458.05. The defendant appealed to the district court. The district court made findings that from the evidence there were two named insureds; that the cancellation of the insurance policy was done by one named insured; that no agency sufficient to establish authority on behalf of the one named insured to cancel the policy on behalf of the other insured was found from the evidence; and that the plaintiffs recover

the amount of $366 and costs of the action. The defendant filed a motion for new trial which was overruled. The court allowed attorneys' fees in the amount of $150 for services rendered in the district court by the plaintiffs' attorneys, and ordered that court costs in the county court go with the affirmance of the county court's decision, and that attorneys' fees allowed in the county court in the amount of $50 still stand. The defendant appealed.

The Dairyland Mutual Insurance Company is a corporation duly established by law and authorized to do business in the State of Nebraska as an insurance company.

The plaintiffs' amended petition alleged that the defendant issued to William and Stanley Kent a liability insurance policy No. 25-03227 on a 1952 Ford two-door custom automobile which was owned by William M. and Stanley Kent; and that according to the terms of the policy the defendant provided William M. and Stanley Kent with liability insurance on the said automobile from November 3, 1959, to February 3, 1960. The amended petition then recites paragraph 21 of the "Conditions" section of the insurance policy which will be noted later. The amended petition further alleged that the plaintiffs renewed the policy for a period of 3 months and received from the defendant a renewal certificate. Paragraph II of the policy is then set forth, which will be noted later. The amended petition then alleged that on February 18, 1960, at about 1:30 p.m., Stanley Kent was operating the Ford automobile and was involved in an accident with a 1959 Cadillac automobile operated by Russell R. Lehmanowsky; that as a result of said accident Russell R. Lehmanowsky filed suit on May 11, 1960, to recover for the alleged damages done to the 1959 Cadillac automobile; that the plaintiffs had complied with all the conditions of the policy, but the defendant claimed that it was not obligated to defend this action and that the policy had been canceled 12 hours

prior to the time of the accident; that as a result of the defendant's refusal to defend the action, William M. Kent and Stanley Kent retained a law firm to represent and defend them in such action; that the defense resulted in the dismissal of Russell R. Lehmanowsky's claim; and that subsequent to the dismissal of the claim, the law firm employed by the plaintiffs negotiated with the true owner of the automobile, Jerry Spady Pontiac-Cadillac, Inc., and settled the claim for $196 and obtained a release of all claims signed on June 9, 1961, by Jerry Spady, president of the above corporation. The amended petition further alleged that the defendant was informed of the fact that the Department of Motor Vehicles of the State of Nebraska, hereinafter referred to as the department, notified the plaintiffs that the department would suspend their operators' licenses unless security in the amount of $500 was deposited with the department; that the defendant neglected and refused to deposit the required security with the department; that as a result, the plaintiffs were required to commence an injunction action against the department in order to retain their licenses; that after securing the release of all claims from Jerry Spady Pontiac-Cadillac, Inc., the plaintiffs caused the release to be sent to the department and, as a result, the department rescinded its order revoking the licenses of the plaintiffs; and that as a result of the defendant's refusal to defend the suit filed by Russell R. Lehmanowsky on May 11, 1960, and as a result of the defendant's refusal to furnish, for filing with the department, a written notice that the plaintiffs had liability insurance in effect at the time of the accident, the plaintiffs were required to expend certain amounts incurred, which are set forth in the plaintiffs' amended petition. The plaintiffs prayed that the rights of the parties be determined; that a judgment be entered adjudging the defendant was obligated to reimburse the plaintiffs for all sums reasonably expended or incurred in the defense of the action brought

by Russell R. Lehmanowsky, in obtaining the release from Jerry Spady Pontiac-Cadillac, Inc., and in preserving their rights to operate a motor vehicle in the amount of $397.95; and that the defendant be required to pay such attorneys' fees in this action as the court deemed just and proper, and for other equitable relief as might be necessary.

The defendant's answer denied all allegations contained in the plaintiffs' amended petition except such as were admitted in the answer, which admission is that the defendant is a corporation established by law and authorized and licensed to do business in this state as an insurance company. The answer then alleged that any insurance policy either of the plaintiffs claimed to have held with this defendant was canceled at the express request of the plaintiff Stanley Kent prior to the accident of 1:30 p.m., February 18, 1960, and prayed for a dismissal of the plaintiffs' amended petition.

The plaintiffs' reply denied every allegation contained in the answer of the defendant except as expressly admitted by the allegations of the plaintiffs' amended petition; alleged that the plaintiff, Stanley Kent, was incompetent to cancel any insurance policy or otherwise contract on his own behalf; and further alleged that Stanley Kent had no authority to act on behalf of William M. Kent. The prayer was for a renewal of the prayer of the plaintiffs' amended petition.

William M. Kent testified that he was 62 years of age; that he was a farmer; that his son Stanley Kent was born on June 11, 1941, and was living with him between November 1959 and February 1962; that Stanley worked part time and had a separate income only from the work that he did; that during that period this witness owned a 1947 Chrysler; that about that time he bought a 1952 Ford automobile; that Stanley made application for the Ford automobile and this witness paid for it; that the Ford was used for transportaton to work and other purposes for which Stanley wanted to use it; that this

witness used the Ford automobile occasionally; and that the title to the Ford automobile was held in the names of William M. and Stanley Kent. This witness further testified that he decided to take out a policy of insurance on the Ford; that Stanley made out the application for the insurance; that the insurance policy was obtained through Dale Sautter; that Stanley made a payment of $20 when he made out the application to obtain the insurance; that there were further sums due on the premium and Stanley had to make application again to obtain the insurance; that this witness paid $57.10 for premium costs; and that this witness received the policy through the mail and had possession of it except when he turned it over to his attorney. The policy shows the names of the insured to be "William & Stanley Kent."

An exhibit in evidence discloses the renewal certificate taken by Dale D. Sautter Insurance Agency, in the names of "William & Stanley Kent," showing that the policy "did expire" February 3, 1960, and "now expires" May 3, 1960.

Another exhibit in evidence is a check dated January 26, 1960, payable to the defendant, in the amount of $57.75, signed by William M. Kent, a premium payment to the defendant on the insurance policy.

William M. Kent further testified that he knew that the Ford automobile was involved in an accident because Stanley told him; that at the time of the accident Stanley was 18 years of age; that legal action was brought against him as a result of the accident; that after the accident he did not notify anyone with refrence thereto, but that Stanley did; that this witness turned the matter over to his attorney; and that the defendant did not defend the action so he secured legal counsel to defend the case which resulted in a dismissal of the case. This witness further testified that Jerry Spady Pontiac-Cadillac, Inc., owned the car involved in the accident; and that later this witness paid Jerry Spady Pontiac-Cadillac, Inc., for damages to the car driven

by Russell R. Lehmanowsky by giving his personal check to his attorney in the amount of $196.

This witness further testified that there were other legal involvements as a result of this accident; that the state was after his driver's license; and that he received a notice through the mail, addressed to him from the Department of Motor Vehicles, notifying him that as a result of a motor vehicle accident in which a vehicle owned by him was involved he became subject to the requirements of the Safety Responsibility Act, and detailed what would be necessary for this witness to do to comply with the law, or his operator's license and privilege to operate a motor vehicle, his license plates, and registration certificate would be suspended as of May 12, 1960. He used the services of his attorney in connection with this matter.

This witness further testified that he did not know that Stanley intended to cancel the insurance policy; that Stanley was supposed to find out how to cancel the policy; that he never told Stanley at any time to cancel the policy; that he asked Stanley to wait until he was in the service so he could continue to use the Ford while he was still at home; that the first time he knew that Stanley attempted to cancel the policy was on the date of the accident; that he found out when Stanley told him about it; and that he was not aware that Stanley had written a letter to the defendant asking that the policy be canceled.

On cross-examination this witness testified that he was not with Stanley when he made application for the insurance policy, but requested Stanley to make the application, and knew that Stanley had done so.

Richard A. Dier testified that he was an attorney at law and William M. Kent was a client of his; that in February or March 1960, he had a request to do some legal work for William M. Kent; that William M. Kent called him with respect to insurance coverage on a 1952 Ford automobile which he and his son owned together,

and with respect to an accident that had occurred while his son was driving the automobile; and that the problem he presented was that the defendant informed him that the insurance policy was not in force. This witness wrote a letter to the defendant or its agent stating William M. Kent's position in the matter. Subsequently William M. Kent was notified by the Department of Motor Vehicles that his driver's license and license plates were to be taken because his insurance carrier had not filed a form SR 21 indicating its liability. Suit was filed for injunction in the district court for Buffalo County to enjoin the Department of Motor Vehicles, to preserve William M. Kent's right to drive pending the determination of the liability of the defendant, and to ascertain whether or not the defendant should have notified the department that it had insured William M. Kent and his automobile. This witness then detailed all the work done in behalf of his client with reference to the action taken by the department, the dismissal of the case brought by Russell R. Lehmanowsky against William M. Kent, and the negotiations had with the firm of Jerry Spady Pontiac-Cadillac, Inc., the title holder of the car with which the Kent car was in collision and from which he secured a release.

There is in evidence an exhibit which is a check dated June 1, 1961, payable to the order of Dier Barton and Barton, in the amount of $196, signed by William M. Kent for car damages. There is also an exhibit which is a check payable to the order of Jerry Spady Pontiac-Cadillac, Inc., in the amount of $196, drawn on the account of Richard A. Dier, attorney, and signed by Dorotha W. Wimberley, a bookkeeper of the firm with which Mr. Dier was associated.

An attorney testified that he was familiar with the legal fees charged in the community; and that he had occasion and opportunity to go through and examine the files of Mr. Dier in connection with the cases involving William M. and Stanley Kent. He gave as his

opinion that in the case of Kent v. The Department of Motor Vehicles, the legal services were worth a minimum of $115, and in the case of Lehmanowsky v. Kent the minimum fee would be $100.

Dale Sautter testified that in February 1960, he was self-employed, representing several insurance companies as agent; that the defendant was one of such companies; and that he was notified of an accident involving Stanley Kent. On cross-examination this witness testified that as agent for the defendant he took an application for insurance from Stanley Kent.

William J. Ross testified that he was one of the attorneys for William M. Kent in connection with his case against the defendant, and testified to the services rendered, that is, the preparation of the pleadings, the time involved in preparing for trial in the county court and district court and trials therein, and the preparation of the brief.

The defendant moved for a directed verdict, which was overruled.

Dale Sautter was called as a witness for the defendant. He testified that Stanley Kent came to see him before he applied for insurance, to get an idea of what the premium would be; and that later Stanley Kent did apply for a policy of insurance. The application is in evidence and shows the owner of the vehicle to be insured as "Kent William & Stanley LeRoy"; the operator to be Stanley LeRoy Kent, and the place for a second operator of the car is not filled in; the occupation to be farming; and the employer to be "(Father) William M. Kent." A premium deposit of $20 is also shown on the application. This application was signed by Stanley L. Kent.

There is also in evidence an exhibit which is an "office note" to the defendant dated November 17, 1959, stating: "Stanley Kent didn't get Premium to me untill (sic) tonight So am Reinstate With new application Im sending full Premium. You will probly (sic) send

me. Rest of other premium of which 20.00 was sent in. thank you.". This note is signed by Dale D. Sautter. There is another exhibit in evidence which is an application for reinstatement of the policy in the name of Kent, William or Stanley LeRoy, dated November 17, 1959, and signed by Stanley Kent applicant.

Dale Sautter further testified that he did not believe that he had any conversations with William Kent from the time the applications were made by Stanley Kent up until the time of the accident.

There is a receipt book belonging to Dale Sautter in evidence which shows a payment of $20 by Stanley L. Kent dated October 29, 1959, and a receipt dated November 17, 1959, for $37.50 received from Stanley Kent by Dale Sautter as agent for the defendant.

Dale Sautter further testified that Stanley Kent contacted him with reference to the cancellation of the policy; that William M. Kent was not with him; that Stanley Kent asked this witness if he could cancel the policy because he was going into the service; that this witness said no, that the policy holder had to cancel it, told him how to cancel the policy, and advised him to cancel the policy a day or two after he left for the service; that Stanley Kent was the only one he ever saw driving the car; that he never saw William M. Kent driving the car; and that he was not sure that he had ever seen William M. Kent with Stanley Kent during any of the insurance transactions. On cross-examination this witness testified that he did not notify William M. Kent that Stanley Kent was canceling the policy.

Howard E. Brown testified that he was employed as branch manager of the Nebraska-Missouri service office for the defendant. He testified with reference to receiving the applications for insurance, and identified the insurance policy and a letter received by the defendant on February 18, 1960, with reference to the request of Stanley Kent that the insurance be canceled as of 12:01 a.m., February 18, 1960.

There is an exhibit in evidence which is a form used by the defendant to process cancellations and is called a cancellation memorandum. This exhibit shows all of the statistical information and coding for the defendant's accounting system, the amount of earned premium, unearned premium, unearned commission, the amount to be returned to the insured, and the amount due the insured by the agent. This exhibit shows the defendant's check No. 25080 dated February 19, 1960, in payment of the return premium due. There is also a copy of the defendant's check No. 25080, dated February 19, 1960, to the order of the Dale D. Sautter Insurance Agency, which is in connection with the cancellation memorandum.

The defendant assigns as error that the trial court erred in overruling the defendant's motion for a directed verdict at the close of the plaintiffs' evidence; and that the trial court erred in failing to sustain the defendant's motion for a new trial.

Certain provisions of the insurance policy involved are as follows:

"II Defense, * * *.

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the Company shall:

"(a) Defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."

"III Definition of Insured

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the named Insured and, if the named Insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or orga-

nization legally responsible for the use thereof, provided the actual use of the automobile is by the named Insured or such spouse or with the permission of either. * * *"

"21. Renewal of Coverage

"All coverages afforded hereby shall expire at the expiration of the term of this policy or at the expiration of any renewal term thereof. In the event the Insured and the company agree to renew this policy, such renewal may be effected by means of a renewal certificate to be attached to this policy, or at the option of the company by issuance of a new policy, but no renewal term shall become effective prior to the actual receipt of the premium in payment for the same and acceptance thereof by the company at the company's office."

"24. Cancellation

"This policy may be cancelled by the named Insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective; if no specific cancellation date is requested by the named Insured, or his agent, cancellation will be effective as of 12:01 A.M. on the date of postmark of the cancellation request, or, if such request contains only a specific date of cancellation, the policy will be cancelled as of 12:01 A.M. on the requested date. This policy may be cancelled by the company by mailing to the named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named Insured or by the company shall be equivalent to mailing.

"If the named Insured cancels, earned premiums shall be computed in accordance with the short rate table and procedure herein. If the company cancels, earned pre-

miums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the named Insured."

With reference to an insurance contract, this court said in Chard v. New York Life Ins. Co., 145 Neb. 429, 16 N. W. 2d 858: "'A contract of insurance should be given a reasonable construction so as to effectuate the purpose for which it was made. In cases of doubt, it is to be liberally construed in favor of the insured.' Hamblin v. Equitable Life Assurance Society, 124 Neb. 841, 248 N. W. 397. See, also, Oswald v. Equitable Life Assurance Society, 128 Neb. 173, 258 N. W. 41."

In Morton v. Travelers Indemnity Co., 171 Neb. 433, 106 N. W. 2d 710, this court said: "In Lonsdale v. Union Ins. Co., 167 Neb. 56, 91 N. W. 2d 245, we reaffirmed that: 'An insurance policy should be construed in the same manner as any other contract in order to give effect to the intent of the parties at the time it was made.

" 'The language therein used should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean.

" 'If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted.

" 'In the construction of a contract, the instrument must be construed as a whole giving force and effect to all of the provisions of the contract.

" 'The parties to an insurance contract may make the contract in any legal form they desire and, in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to

limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and enforced as expressed.' See, also, Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874."

There is no explanatory language limiting the definition of "the named insured" in the cancellation clause of the policy here involved. In the light of the above principles of law, the phrase "the named insured" clearly indicates and includes the names described in the insurance policy. No limitations or exceptions were expressed in the policy of insurance. In the event of any ambiguity in the definition of "the named insured," such would be resolved in favor of the insured. However, we conclude from a reading of the policy that no ambiguity exists. It is clearly indicated that William M. Kent and Stanley Kent are designated as the co-owners of the automobile insured by the defendant.

It is the defendant's contention that under the facts in this case Stanley Kent was the agent of William M. Kent and directed by him to procure the insurance, and that Stanley Kent was vested with full authority to cancel the policy.

In Valentine Oil Co. v. Powers, 157 Neb. 87, 59 N. W. 2d 160, this court said: "As said in Restatement, Agency, § 1, p. 7: 'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' In comment d, p. 10, it is said: ' "Agent" is a word used to describe a person authorized by another to act on his account and under his control.'

"As stated in 2 C. J. S., Agency, § 2, p. 1026: 'The distinguishing features of agency are its representative character and its derivative authority. Whether a particular relationship is an agency depends on the relations of the parties as they in fact exist, without re-

gard to what they call their relationship.' Also, 'It is the duty of an agent, in all transactions concerning or affecting the subject matter of the agency, to act with the utmost good faith and loyalty to further the principal's interests.' 3 C. J. S., Agency, § 138, p. 6."

The defendant refers to 3 Am. Jur. 2d, Agency, § 13, p. 426, which states in part: "As a rule, any person has the capacity to act for another, and even though a person might be under such legal disability that his contracts would not be binding upon himself, he may nevertheless act as the agent of another."

The defendant also refers to 3 Am. Jur. 2d, Agency, § 14, p. 427, which states in part: "Although the contracts of infants are not, in all cases, binding on them, there is no doubt that they may act as agents, and their contracts, made in that character, if otherwise unexceptionable, will be binding on their principals. The privileges which the law allows an infant are given to protect his own interests, not to enable him to disaffirm acts done for others not affecting his own property."

The defendant cites certain language from the case of Farmers Cooperative Shipping Assn. v. Adams Grain Co., 84 Neb. 752, 122 N. W. 55, as follows: "It is well established that the authority of an agent cannot be established by his own acts and declarations. * * * Consequently, when we speak of the apparent authority of an agent as binding his principal, we mean such authority as the acts or declarations of the principal give the agent the appearance of possessing."

The defendant cites Thomson v. Shelton, 49 Neb. 644, 68 N. W. 1055, wherein this court said: "Ostensible authority to act as agent may be conferred if the party to be charged as principal affirmatively or intentionally; or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency."

The defendant asserts that, applying the above principles or theories, William M. Kent knew, or should have

known, that before Stanley Kent could purchase insurance, as he was directed to do, Stanley Kent would be required to fill out an application form provided by the insurance company; that it is from the representations made on the application by the applicant that an insurance company gathers facts upon which to base its decision as to whether or not to accept the risk and what premium is to be assessed; and that Stanley Kent was the agent of William M. Kent and was authorized to cancel the insurance policy.

Other texts and cases are cited by the defendant announcing the above propositions of law relating to agency.

The plaintiffs' position is that where two names appear on the face of the insurance policy and the automobile is owned by the same two persons named in such policy, the policy must be construed to include both names for the purpose of effecting a binding cancellation of the policy of insurance.

Section 44-374, R. R. S. 1943, provides: "No policy of insurance shall be issued upon any property except in the name of some party having an interest in the property."

Under the above statute it is apparent that William M. Kent was properly made an insured because he had an interest in the automobile in suit and was a coowner thereof.

In 29 Am. Jur., Insurance, § 239, p. 623, it is said: "The definition recognized in the cases is that the insured, under a contract of insurance upon property or of health and accident insurance, is the person in whose favor the contract is operative and who is indemnified against, or is to receive a certain sum upon, the happening of a specified contingency or event."

In Jones v. Dubuque Fire & Marine Ins. Co., 317 Pa. 144, 176 A. 208, the court held: "Where property is owned jointly, and so insured, one owner cannot cancel the policy of insurance and substitute another therefor

without the consent of the coinsured."

In 29 Am. Jur., Insurance, § 404, p. 752, it is said: "Cancellation of an insurance policy under a provision allowing cancellation at the request of the insured may be effected through agents. It is not necessary under a provision of this kind that the request for cancellation be made personally by the insured, but it is sufficient if it is made by a person acting as the agent of the insured. *However, an agent whose authority is limited solely to the procurement of a policy has not per se the right to cancel the policy.*" (Emphasis supplied.)

From the evidence, the transaction delegated by William M. Kent was the purchase of an insurance policy. The cancellation of that policy is not incidental, but contrary, to the express authority granted. The express authority to buy an insurance policy does not carry with it the implied authority to cancel such policy. It is true that William M. Kent specifically authorized Stanley Kent to purchase the insurance policy. From the evidence it is clear that he did not expressly authorize or consent to Stanley's attempted cancellation of the policy, and had no knowledge of this fact until after the accident.

From the evidence and the authorities cited by the plaintiff, we conclude that the express authority to purchase this policy of insurance does not carry with it the implied authority to cancel such insurance so as to bind William M. Kent. William M. Kent has not by his own act and conduct clothed Stanley Kent with the apparent authority to cancel the policy of insurance.

The agent of the defendant was well aware of the situation and knew that Stanley Kent and William M. Kent were the coowners of the automobile insured. The record shows that the defendant had full and complete knowledge that William M. and Stanley Kent were coowners of the automobile which the defendant insured. They were designated as such in the insurance policy. The policy was so issued. A check of William M. Kent

for the premium was received by the defendant as payment of the premium for the policy.

Under the evidence in this case and the authorities cited by the plaintiff, we conclude that the judgment of the trial court should be, and is hereby, affirmed, and that attorneys' fees in the amount of $200 should be taxed as costs for services of counsel for plaintiffs in the Supreme Court.

AFFIRMED.