CYNTHIA S. HANSEN, APPELLANT, V. U.S.A.A. CASUALTY INSURANCE COMPANY, APPELLEE.

291 N. W. 2d 715

Filed April 29, 1980. No. 42583.

John Thomas, for appellant.

James W. Knowles of Knowles & Edmunds and Edward A. Mullery, for appellee.

Heard before KRIVOSHA, C. J., BRODKEY and WHITE, JJ., and RONIN and GARDEN, District Judges.

KRIVOSHA, C. J.

This appeal presents to the court a question of first impression: Whether an insurer, before canceling the insurance covering a motor vehicle owned by several individuals, must give notice of such cancellation to all the owners even though not all the owners are shown on the face of the policy as the named insured. The trial court concluded that the insurer

was only required to give notice of cancellation to any owner listed as a named insured and sustained the appellee's motion for summary judgment. For reasons more particularly set out in this opinion, we believe that the rule should be otherwise and, accordingly, we reverse and remand with directions the decision of the District Court for Douglas County, Nebraska.

The record discloses that the appellant, Cynthia Hansen (Hansen), and one Robert L. Roos (Roos) were married on August 14, 1976. At the time of their marriage, Hansen was the owner of a 1974 Toyota Corona (vehicle). Title to the vehicle was placed in the name of "Robert L. Roos and/or Cynthia S. Roos (Hansen) WROS."

At the time of the parties' marriage, Roos was an officer in the U. S. Army and, as such, was eligible to insure his vehicles with United States Automobile Association (U.S.A.A.), a reciprocal insurance exchange located in Texas. Insurance with U.S.A.A. could be obtained only by officers of the armed forces and only such officers could be shown as the named insured. The policy did provide, however, that the coverage would extend to the spouse of a named insured if a member of the named insured's household. Roos had already insured with U.S.A.A. a 1975 Toyota Land Cruiser owned by the parties and, on August 25, 1976, he submitted an application to U.S.A.A. for the purpose of having the 1974 Toyota Corona added to the policy. The application required the applicants to advise U.S.A.A. of the "[n]ame in which the vehicle is legally registered." In response to that question, the parties advised U.S.A.A. that title to the vehicle was in the names of "Robert L. Roos and Cynthia S. Roos." Likewise, the application advised U.S.A.A. that Hansen was to be the principal operator of the vehicle and that she was Roos' wife. Thereafter, the policy of insurance was reissued covering both the 1975 Toyota Land

Cruiser and the 1974 Toyota Corona. Because, however, only military officers could purchase a policy from U.S.A.A., only Roos' name was shown on the policy as the named insured. Hansen's name appeared on the policy simply as an operator and not as a named insured.

Some time early in December 1977, the parties separated and on December 15, 1977, Hansen filed suit to dissolve the marriage. On or about February 6, 1978, Hansen received a telephone call from Roos in which Roos advised her that he had removed the insurance on the 1974 Toyota Corona effective February 28, 1978. Hansen maintains that, when she was advised of this fact, she told Roos that if the company wanted to cancel the policy they would give her notice and took no further steps to obtain any other coverage. The evidence further discloses that, on or about February 6, 1978, Roos telephoned U.S.A.A. and asked them to delete the 1974 Toyota Corona from the policy, leaving insurance coverage under the policy only on the 1975 Toyota Land Cruiser. Roos advised the company that he and his wife had separated and requested that it notify her of the fact that the automobile she owned and operated would be removed from the policy effective February 28, 1978.

The record reflects further that, on or about March 2, 1978, Roos again called U.S.A.A. to inquire whether notice had been sent to his wife. U.S.A.A. replied that there was no record of any notice being sent but that it would advise Hansen that the policy had been canceled as to her vehicle and that she should obtain other insurance. The records of U.S.A.A. specifically show the following notation as of, apparently, March 9, 1978: "Call . . . I'll Send notification to Cynthia that car has been ex, . . . ." The record further reflects that the company was aware that the parties had separated and were in the process of obtaining a divorce. On March 11,

1978, Hansen was involved in a two-car accident and immediately notified U.S.A.A. of the fact, believing that she still had coverage for her vehicle with U.S.A.A.

On March 14, 1978, U.S.A.A. wrote Hansen a letter stating: "We regret to tell you that we are unable to continue USAA insurance for you. The coverage for the 1974 Toyota has been canceled effective February 28, 1978. You should obtain insurance in your own name immediately for proper coverage."

Hansen was subsequently sued by the owner of the other vehicle involved in the March 11 accident. U.S.A.A. refused to defend the suit or to pay plaintiff's claim on the collision, as the result of which the instant action was commenced by Hansen to have the court declare her rights under the policy and to provide other equitable relief.

U.S.A.A. moved for summary judgment. The trial court granted the motion on the basis that, Hansen not being a named insured, U.S.A.A. was under no obligation to notify her of the cancellation of the policy as to the vehicle and no coverage existed on the date of the accident.

Hansen argues to the court that she was entitled to notification as a matter of law by reason of the fact that she was a joint owner of the property and a joint insured. She relies upon our decision in *Kent v. Dairyland Mut. Ins. Co.*, 177 Neb. 709, 131 N.W.2d 146 (1964). It is true that, in *Kent,* we said, where property is jointly owned and *so insured,* one owner cannot cancel the policy of insurance without the consent of the coinsured. The *Kent* decision, however, is limited to those instances in which the property is not only jointly owned but jointly insured. The instant property, while jointly owned, was not jointly insured, as claimed by Hansen, and the *Kent* decision is of little help in deciding this matter.

U.S.A.A., on the other hand, maintains it had no alternative but to accept directions from the sole

named insured. The company points to both the language of the policy itself and to Neb. Rev. Stat. § 44-379 (Reissue 1978). See, also, Neb. Rev. Stat. § 44-379.01 (Reissue 1978).

U.S.A.A. misses the true issue. The issue in this case is not whether the named insured had the right to cancel the policy or any part thereof, but whether a co-owner of the property, not a named insured, is at least entitled to notice of such cancellation before it becomes effective. To be sure, the company should not be placed in the position where a named insured may order the cancellation of a policy while another party countermands the request. To that extent, the law is clear that the named insured was entitled to cancel the insurance on his own behalf. See, 17 Couch on Insurance 2d, § 67:100 (1967); *Johnson v. St. Paul Fire & Marine Ins. Co.,* 104 Neb. 831, 178 N.W. 926 (1920). The question here, however, is whether Hansen was entitled to be notified of the cancellation prior to the time it became effective so that she might obtain other insurance in advance of cancellation.

The considerations involved in this case affect more than just the insured and the insurer and, in fact, involve the general public. The action of the insurer caused Hansen to become an uninsured motorist without opportunity to obtain other insurance before the provided coverage was withdrawn. We are, in reality, called upon to decide whether the public policy of this state should be such that an insurer may create uninsured motorists without their knowledge or whether the public policy should rather be that, having once obtained coverage, one may not become an uninsured motorist without, at least, being made aware of that fact. If we opt for the second choice, then we must determine that an insurer may not cancel a policy covering a mutually owned motor vehicle without first advising each of the known mutual owners at his or her last known

address. This would have to be true notwithstanding any provision in the policy to the contrary. Such a rule, however, would be appropriate. It has frequently been held that any contract of insurance which is contrary to any settled rule of public policy is invalid and unenforceable. *Ritter v. Mutual Life Insurance Co.,* 169 U.S. 139 (1898); 43 Am. Jur. 2d, Insurance, § 241 (1969).

Is there sufficient compelling public policy to require such a rule as suggested herein? In *Farm Bureau Ins. Co. v. Adams,* 145 Ind. App. 516, 519, 251 N.E.2d 696, 698 (1969), the Indiana court made this interesting observation:

> Notice of motor vehicle liability insurance cancellation touches an area of public interest far beyond the scope of the relationship of the parties before us. The dangers of driving uninsured vehicles are obvious. Not only may one be subjected to the risk of a large financial liability at the hands of a negligently injured person, but the opportunity for that other injured party to gain a reasonable amount of damages for his injury is considerably lessened. It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance.

We share this view. An examination of certain Nebraska statutes likewise makes it clear that our Legislature also shares it.

Nebraska has adopted what is referred to as the Motor Vehicle Safety Responsibility Act, Neb. Rev. Stat. § 60-501 (Supp. 1979) and 60-502 to 569 (Reissue 1978). Under the provisions of Part (c) of that act, entitled "Security Following Accident" and comprising §§ 60-507 to 515, anyone having an automobile accident involving bodily injury or death, or property damage in excess of $250 must, within 90 days following such event, file with the Department of

Motor Vehicles evidence of financial responsibility.
Upon a driver's failure to do so, the Department of
Motor Vehicles revokes the individual's license to
operate a motor vehicle and the ability to register a
motor vehicle. To permit an insurer to cancel with-
out notice a policy covering a mutual owner, not a
named insured, is not only to subject the individual
to subsequent potential liability for damages which
the individual may not be able to meet, but also to
subject the individual to the loss of driving privileges
and ownership of a vehicle. All of this will be
avoided if we declare that an insurer is required to
notify all known owners of property that they and
their property are about to become uninsured.

Under the same Motor Vehicle Safety Responsibil-
ity Act, one who has lost one's license by reason of
failure to have insurance may not have that license
reinstated without filing proof of financial responsi-
bility, such as a certificate by an insurance carrier.
§ 60-529. Section 60-544 provides that, once a carrier
has certified a motor vehicle liability policy for pur-
poses of permitting an operator to have a license
reinstated, such certificate may not be canceled or
terminated until at least 10 days after notice of can-
cellation or termination of the insurance is filed *in
the office of the Department of Motor Vehicles.* It
makes little sense to us to hold that, once an indi-
vidual who has lost a license for failure to be insured
obtains proof of financial responsibility, the com-
pany may not cancel the certificate unless notice is
given, even though the operator may not be the
named insured, but may cancel the policy without
notice in the first instance, thereby possibly causing
a loss of license that will bring into play the provi-
sions of §§ 60-526 to 529.

Two other jurisdictions which have had occasion
to view this matter have reached similar conclu-
sions. In the case of *Safeco Insurance Co. v. Green,*
260 Md. 411, 272 A.2d 383 (1971), the facts disclosed

that, prior to March 6, 1967, one Donald G. Orem (Orem) procured an automobile insurance policy from Safeco. The policy was issued in his name only. On March 6, 1967, Orem had added to the policy a Cadillac titled in the name of his wife. No mention of ownership was made in the policy. On Saturday, April 15, 1967, Orem became angry with his wife. He telephoned his insurance agent and directed that the Cadillac be removed from the policy. The accident which gave rise to the litigation occurred the following day, when Mrs. Orem was operating the Cadillac. In holding the cancellation ineffective, the Maryland court said:

> Safeco and its agent had knowledge of the existence of the wife since her occupation was listed as "Housewife". Smith [the agent] had that knowledge at the time of the elimination of the coverage of the vehicle since the reason given for elimination pertained to the wife. The elimination of that coverage without notice to her placed her in a precarious position. If she failed to obtain other insurance she became liable for the increased payment for the benefit of the Unsatisfied Claim and Judgment Fund. Under the rules of the Unsatisfied Claim and Judgment Fund Board if she failed "to show evidence of continuous insurance, or to prove [s]he ha[d] surrendered [her] license plates prior to insurance termination, or to pay the statutory fee", her motor vehicle registration became subject to suspension by the Department of Motor Vehicles. Without notice, she would have had no reason to procure other insurance. . . .

> In the light of the established public policy of this State relative to insurance of motor vehicles, we hold that Safeco was without authority under the circumstances of this

case to eliminate or delete the vehicle known to be operated by Mrs. Orem without first giving notice to her of that deletion and a reasonable time thereafter to obtain insurance protection elsewhere. She was a known beneficiary of this liability policy.

*Safeco, supra* at 416, 272 A.2d 386.

A similar result was reached in the case of *Government Employees Ins. Co. v. Employers Commercial Union Ins. Co.,* 88 Misc. 2d 132, 387 N.Y.S.2d 52 (1976) (*GEICO I*), *aff'd sub nom. Govt. Ins. v. Employers Ins.,* 62 A.D.2d 123, 404 N.Y.S.2d 652 (1978) (*GEICO II*). In the *GEICO* case, a father held a GEICO policy in his name alone on both his own car and his son's. At some point, he declined to renew the coverage on his son's car, but the son was never notified of the nonrenewal and, a few months later, he had an accident while driving his own car. The company maintained that, because the father was the named insured, he alone had the right to cancel the policy and no other notice was required. In rejecting that position, the New York court said:

Since the son, the car owner, had his insurance dropped without his apparent consent, it left the odd and unpalatable situation of an uninsured owner-driver on the road possibly thinking he was still insured. Worse it left accident victims subject to injury at his hands without the insurance protection our laws mandate.

*GEICO I, supra,* at 132, 387 N.Y.S.2d 53.

We find the reasoning of these decisions persuasive. Once a company has knowledge that there are multiple owners of property covered by the policy, though all are not shown as the named insured, in addition to any other statutory or policy requirement regarding notice, all known owners are entitled to notice of the fact that the policy is about to be canceled and should be given reasonable time to obtain

other insurance. To hold less would be to ignore the realities of life. Few owners of motor vehicles concern themselves with whether they are shown upon the policy as a "named insured" as long as they believe they have coverage. To permit one owner to expose another owner to potential liability without notice is not consistent with what the Legislature attempted to do in enacting the Motor Vehicle Financial Responsibility Act. To require notice to all known owners of the motor vehicle does not exact too high a price for the privilege of doing business in this state.

We, therefore, hold that where an insurer has information that there are multiple owners of an insured motor vehicle, though not all are shown as named insured, the company may not cancel the policy, either at the request of a named insured or at the company's initiative, until notice is given to all persons known to have an ownership interest in the motor vehicle, at their last known addresses, in enough time to afford them a reasonable opportunity to obtain other insurance. For that reason, the judgment of the District Court is reversed and the cause remanded with directions to find that the purported notice of cancellation was given to Hansen after the date of the accident and was ineffective, thereby entitling Hansen to all her rights under the policy.

REVERSED AND REMANDED WITH
DIRECTIONS.