SAFECO INSURANCE COMPANY OF AMERICA
*v.* GREEN ET AL.

[No. 208, September Term, 1970.]

*Decided January 13, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Hamilton O'Dunne,* with whom was *Frank X. Gallagher* on the brief, for appellant.

*James L. Mann, Jr.,* with whom were *Jack L. Hardwick* and *Hardwick & Tripoda* on the brief, for Barbara Ann Green, one of appellees.

*William E. Brannan, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for Unsatisfied Claim and Judgment Fund, other appellee.

SMITH, J., delivered the opinion of the Court.

Appellant Safeco Insurance Company of America (Safeco) seeks to reverse a declaratory judgment holding that its policy was in force at the time of an accident as to an automobile owned by a wife, coverage for which her husband directed be deleted from the policy on the day prior to the accident. We shall affirm that judgment.

The basic facts are undisputed. Prior to March 6, 1967, Donald G. Orem (Orem) had procured an automobile liability policy from Safeco. The policy was issued in his name only. It did not mention his then wife, one of the appellees, by name. Her occupation as "Housewife" was listed, however. The policy was procured through the agency of J. Charles Smith, Jr. (Smith), and covered a 1954 Plymouth. On March 6, 1967, Orem had added to the policy a Cadillac titled in the name of his wife for which he said he paid. No mention was made in the policy as to ownership of that car.

On Saturday, April 15, 1967, Orem became angry with his wife. He telephoned Smith and directed that the Cad-

illac be removed from the policy. Smith was asked what reason was given by Orem for eliminating the coverage. From there the pertinent portion of the record is as follows:

> "A. Mr. Orem was concerned about his liability coverage because his wife was using the vehicle in a manner that he did not approve of, so he requested me, asked me if it was possible to eliminate this vehicle from the policy. I said yes, we'll not cancel the policy, we'll just eliminate that vehicle from the policy. He says he still wanted coverage on his other car. So, we left one car—we didn't cancel the policy, we just —
>
> "(The Court) Just eliminated the Cadillac from coverage?
>
> "(The Witness) Yes, sir.
>
> "Q. (Mr. Gallagher) And that was done, then, on what date? A. It was done on the same day.
>
> "(The Court) And that was April 15th, 1967?
>
> "(The Witness) Yes, sir.
>
> "(The Court) A verbal agreement?
>
> "(The Witness) Yes. It was a matter of a couple days before we could process it."

Smith testified he had no knowledge as to ownership of the Cadillac.

When Orem called his wife to advise that he had eliminated coverage for the Cadillac, he was at a bar, drinking. His wife was at her mother's. She did not believe him.

The accident giving rise to this litigation occurred the following day, Sunday, when Mrs. Orem was operating the Cadillac. She notified Smith of the accident on Monday. On Tuesday Smith executed an endorsement to the policy deleting the Cadillac "per phone call from insured on 4-15-67". Safeco defended upon the strength of that endorsement.

The trial judge noted that the term "named insured" was defined in the "Liability Section" of the policy as

meaning "the individual named in the declarations and also includes his spouse, if a resident of the same household": that at the time of the accident the husband and wife did reside in the same household; that Section 15 of the policy said it might "be canceled by the insured named in the declarations by surrender thereof to Safeco or any of its authorized agents or by mailing to Safeco written notice stating when thereafter the cancellation [should] be effective"; and that no notice of cancellation had been given the wife. He concluded that the terms "insured named" and "named insured" "to the average layman reading a policy * * * would carry the same connotation, and would * * * reasonably be interpreted to mean the same", and held as a matter of law "that the overall effect of the language in the policy means that 'named insured' and 'insured named' are indeed one and the same, and are interchangeable * * *".

Notwithstanding the deletion of the Cadillac from the policy, Mrs. Orem continued to be protected so long as she operated the vehicle which remained in the policy, the 1954 Plymouth. Moreover, as a "named insured", as the term was defined in the "Liability Section" of the policy, she continued to be protected in the operation of a non-owned automobile. "Non-owned" is defined in the policy as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile * * *." The Cadillac was not a non-owned vehicle. Under the policy terms what we here have is not a cancellation of all insurance under the policy as to Mrs. Orem, but elimination or deletion of a particular vehicle primarily operated by her.

The trial judge found persuasive the rule relative to life insurance policies found in 43 Am.Jur.2d, *Insurance,* § 434 (1969), to the effect that "the interest of one named as a beneficiary in a life insurance policy cannot be terminated by the insured without the consent of the beneficiary except in pursuance of such a right in the insurance contract itself". A like parallel might be found here.

There has been an increasing public concern relative to the problem of uninsured motor vehicles. This concern has been manifested by a number of enactments of the General Assembly of Maryland. The creation of the Unsatisfied Claim and Judgment Fund with the requirement that owners of uninsured motor vehicles pay in addition to the normal registration fee a contribution to this Fund is one example. In 1965 the General Assembly enacted what became Code (1967 Repl. Vol.), Art. 66½, § 176A authorizing the Unsatisfied Claim and Judgment Fund Board by rule or regulation to require that all persons with insured motor vehicles submit proof of such insurance and that on the cancellation or termination of coverage the insurer be required to notify the Board of such "cancellation or termination" together with the reason. This particular provision of the statute is now Code (1970 Repl. Vol.), Art. 66½, § 7-632. This authorization was implemented by the Board. Chapter 218 of the Acts of 1966 (effective at the time of this incident) required an insurer to give notice to its insureds of its intention to cancel or not to renew a motor vehicle liability policy for any reason other than for non-payment of premium with such notice to be given at least 30 days prior to the date of the proposed cancellation or expiration of the policy and to include in that notice advice to "immediately contact an agent or broker for other insurance or request insurance through the Maryland Automobile Insurance Plan", with the further comment in the required form of notice, "The plan affords eligible persons the right to obtain liability insurance."

Code (1967 Repl. Vol.), Art. 66½, § 158A as enacted in 1964 (now Code (1970 Repl. Vol.), Art. 66½, § 7-603.2) provided that no insured person should be required to pay an uninsured motor vehicle registration fee during the term of a previously obtained liability policy, if he obtained other insurance within not more than 15 days after a cancellation notice had been sent by the receiver of an insolvent insurance company.

Yet other evidence of the concern of the General As-

sembly for the protection of the people of the State in the matter of motor vehicle accidents is to be found in Code (1968 Repl. Vol.), Art. 48A, § 481A, as enacted in 1965, providing that endorsements protecting "the insured against damage caused by an uninsured motor vehicle * * * shall be deemed to cover damage caused by a motor vehicle of which the liability insurer is or becomes insolvent", and in the enactment found in Chapter 912 of the Acts of 1965, since amended and now codified as Code (1970 Cum. Supp.), Art. 48A, § 482A, creating the Motor Vehicle Security Fund for the purpose of protecting our people from the situation in which they find themselves when claims arising from motor vehicle accidents are the responsibility of insurance companies which have become insolvent.

Safeco and its agent had knowledge of the existence of the wife since her occupation was listed as "Housewife". Smith had that knowledge at the time of the elimination of the coverage of the vehicle since the reason given for elimination pertained to the wife. The elimination of that coverage without notice to her placed her in a precarious position. If she failed to obtain other insurance she became liable for the increased payment for the benefit of the Unsatisfied Claim and Judgment Fund. Under the rules of the Unsatisfied Claim and Judgment Fund Board if she failed "to show evidence of continuous insurance, or to prove [s]he ha[d] surrendered [her] license plates prior to insurance termination, or to pay the statutory fee", her motor vehicle registration became subject to suspension by the Department of Motor Vehicles. Without notice, she would have had no reason to procure other insurance. Under the Financial Responsibility Law Mrs. Orem became required subsequent to the accident to establish her financial responsibility by showing an applicable policy of insurance in effect, depositing security in the form of cash or bond, or presenting a release from the other party or parties. If she failed to so comply, her operator's license would be in jeopardy. Moreover, upon failure to satisfy any judgment obtained against her,

Mrs. Orem's operator's license would be suspended and she would be barred from registering any motor vehicles.

In the light of the established public policy of this State relative to insurance of motor vehicles, we hold that Safeco was without authority under the circumstances of this case to eliminate or delete the vehicle known to be operated by Mrs. Orem without first giving notice to her of that deletion and a reasonable time thereafter to obtain insurance protection elsewhere. She was a known beneficiary of this liability policy.

*Judgment affirmed; appellant to pay the costs.*