**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,**
Plaintiff–Appellee,

v.

**NORDIC LEASING, INC.,**
Defendant–Appellant.

No. 309, Docket 94–7192.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1994.

Decided Dec. 9, 1994.

726

John A. Serafino, Rutland, VT (Ryan, Smith & Carbine, Ltd., of counsel), for defendant-appellant.

Philip C. Woodward, Burlington, VT (Samuel Hoar, Jr., Dinse, Erdmann & Clapp, of counsel), for plaintiff-appellee.

Before: OAKES, PIERCE and ALTIMARI, Circuit Judges.

OAKES, Senior Circuit Judge:

This appeal concerns provisions of Vermont insurance law which require insurance companies to give notice before terminating certain policies. Specifically at issue are two such. Section 4715 of Title 8, Vermont Statutes Annotated, requires a provider of commercial risk insurance to "confirm in writing ... its intention to renew [a] policy," but does not specify to whom such confirmation must be sent. Section 804(a) of Title 23 provides that automobile insurance policies issued as proof of financial responsibility be "noncancellable except after 15 days' notice to the commissioner." At issue is whether a policy has been "cancelled" within the meaning of this section if it has expired and not been renewed.

These issues arise on an appeal by Nordic Leasing, Inc. ("Nordic") from an order of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., Judge, granting summary judgment to plaintiff American Casualty Co. ("American") and denying Nordic's motion for summary judgment. Nordic was named as an "additional insured" under an insurance policy issued to Vermont Sprinkler Systems, Inc. ("Vermont Sprinkler") by American (the "policy"). Nordic claims that American's nonrenewal of the policy for nonpayment was void under 8 V.S.A. § 4715 because the insurer gave notice of the policy's impending expiration only to Vermont Sprinkler (the "named insured"), and failed to notify Nordic (the "additional insured"). Nordic contends as well that the nonrenewal was void under 23 V.S.A. § 804 because American failed to notify the Vermont Commissioner of Motor Vehicles (the "Commissioner"). We reject the first of Nordic's contentions but concur with the second. That is, we conclude that American's termination of the policy was not void under section 4715, but that section 804 required American to notify the Commissioner prior to termination, and that material factual issues preclude summary judgment on the question of whether it did so. Accordingly, we reverse and remand for a trial on this issue.

## BACKGROUND

This declaratory judgment action arises out of a personal injury lawsuit filed against Nordic, a motor vehicle leasing company, in 1988 in the State of Maine. Nordic filed a claim for indemnification under its policy with American, despite American's representation that the policy had expired. American responded by filing this action against Nordic, seeking a declaration that it owed Nordic no duty to defend or indemnify Nordic because the automobile insurance policy American issued, naming Vermont Sprinkler as the "named insured" and Nordic as the "additional insured (lessor)," was no longer in effect on February 10, 1988, the date of the automobile accident. Nordic contends that the policy remained in effect for the two reasons enumerated above. We set out the material facts below.

In 1985, Nordic leased a 1985 Toyota pickup truck to Vermont Sprinkler. The lease required Vermont Sprinkler to maintain liability insurance coverage on the vehicle, with Nordic as an insured. Vermont Sprinkler then contracted with American for a one-year policy for the truck that went into effect in October 1986, scheduled to expire on October 3, 1987. Nordic received a copy of the declarations page, which showed the scheduled period of coverage. The policy named Vermont Sprinkler as the "named insured," and an endorsement to the policy named Nordic as the "additional insured (lessor)." The endorsement provided that "the lessor [Nordic] is not liable for payment of [Vermont Sprinkler's] premium." The loss payable clause accompanying the endorsement required American to give notice to Nordic if the policy were canceled "during the policy period." Neither the endorsement nor the clause, however, required notice in the event of nonrenewal.

On an additional endorsement, American added another additional insured to the policy—John Morin, the president of Vermont Sprinkler. Because Morin had been convicted of driving while intoxicated in 1986, he was required, under Vermont's Motor Vehicle Financial Responsibility Law, to demonstrate proof of financial responsibility in order to be eligible for a driver's license. Thus, he was required to add his name to Vermont Sprinkler's liability policy, and American was required to file with the Vermont Department of Motor Vehicles (the "DMV") a Form SR–22 (a Financial Responsibility Insurance Certificate), certifying that he was insured up to the statutory requirement. American filed an SR–22 dated October 8, 1986.

On November 25, 1987, more than seven weeks after the policy's expiration date, American sent a notice of renewal to Vermont Sprinkler along with a renewal bill. (American attributes its late notice to computer error.) The notice indicated that the policy could be renewed if payment were made by January 9, 1988. Vermont Sprinkler never paid the premiums, and the policy

was marked non-renewed for nonpayment of premium, effective January 23, 1988.

On February 10, 1988, a Vermont Sprinkler employee, Maurice Morin, while driving the 1985 Toyota pickup leased from Nordic, struck and injured a pedestrian, Jerome Cote. Mr. Cote's conservator and spouse filed suit for damages in Aroostook County Superior Court, Maine. The suit named as defendants Maurice Morin, John Morin (the president of Vermont Sprinkler), and Vermont Sprinkler. Also named, pursuant to Maine's statute imposing vicarious liability on lessors of motor vehicles, was Nordic.

Nordic filed a claim with American, claiming that it was covered by the insurance policy with Vermont Sprinkler even though the policy had apparently expired prior to the motor vehicle accident. Subsequent correspondence between American and Nordic's contingent insurance carrier, The Reliance Companies ("Reliance"), disclosed that the insurance companies disagreed concerning American's compliance with the statutory notice requirements. American therefore filed this declaratory judgment action in August 1992, seeking a judicial determination of American's obligations to Nordic under the policy.

In a three-page opinion, the district court denied Nordic's motion for summary judgment and granted American's cross-motion. Judgment was entered for American on January 14, 1993. After Nordic's motion for reconsideration was denied, Nordic filed this appeal.[1] The underlying litigation, meanwhile, has been settled for approximately $250,000, but American and Reliance continue to disagree about who must ultimately bear the cost.

## DISCUSSION

■ In order to prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In deciding such a motion, the district court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). We review a district court's grant of summary judgment *de novo. Westinghouse Elec. Corp. v. New York City Transit Auth.,* 14 F.3d 818, 821 (2d Cir.1994).

### I. The Notice Requirement of 8 V.S.A. § 4715: Notice to an "Additional Insured"?

■ Nordic contends that its policy with American remained in force at the time of the accident because American failed to terminate the policy in accordance with the notice requirement of 8 V.S.A. § 4715, which governs renewal of commercial risk policies. This section provides:

### § 4715. Renewal policies

(a) If the insurer has the necessary information to issue the renewal policy of insurance to which section 4711 of this title applies, *the insurer shall confirm in writing* at least 45 days prior to expiration *its intention to renew the policy* and the premium at which the policy is to be renewed. *The insured shall have the right to renew the policy at this premium.*

(b) An insurer not complying with subsection (a) of this section shall grant its insured renewal coverage at the rate or premium in effect under the expiring or expired policy or at rates lawfully in effect on the expiration date. This shall be done on a pro rata basis and shall continue for 45 days after the insurer confirms renewal coverage and premium. *This subsection shall not apply if the insured accepts the renewal policy.*

8 V.S.A. § 4715 (1993) (emphasis added).

Section 4715 must be read in conjunction with its preceding sections, sections 4711 to

---

1. In Nordic's Notice of Appeal, Nordic erroneously appeals from the February 7, 1994 order denying its motion to reconsider, rather than from the district court's January 14, 1994 grant of summary judgment. Both parties have, however, briefed and argued the appeal as if it were taken from the January judgment, and American has not been prejudiced by the error, so we treat the appeal as if it were taken from the judgment.

4714, which together with it comprise subchapter 3 of chapter 128 of Title 8, Vermont Statutes Annotated, concerning cancellation and nonrenewal of commercial risk insurance policies. These sections define the circumstances under which such policies may be cancelled, and, more materially for purposes of this action, set out notice requirements for cancellation, nonrenewal, and renewal. Sections 4712 and 4713 set out the notice requirements, respectively, for cancellation and nonrenewal, and, unlike section 4715, they specify to whom notice must be sent:

### § 4712. Notice of cancellation

(a) No notice of cancellation of a policy to which section 4711 of this title applies [*i.e.,* commercial risk insurance other than farm risks] shall be effective unless mailed or delivered by the insurer *to the named insured* at least 45 days prior to the effective date of cancellation, provided, that where cancellation is for nonpayment of premium at least 15 days' notice of cancellation shall be given.

.    .    .    .    .

(d) This section shall not apply to nonrenewal.

### § 4713. Notice of nonrenewal

No insurer shall refuse to renew a policy of insurance to which section 4711 of this title applies at its expiration or anniversary if written for a term of more than one year, unless such insurer or its agent shall mail or deliver *to the named insured* ... at least 45 days' advance notice of its intention not to renew. *This section shall not apply* ... *in case of nonpayment of premium,* or if the insured fails to pay any advance premium required by the insurer for renewal....

*Id.* §§ 4712, 4713 (emphasis added).

Section 4715's silence regarding who must be notified is at the heart of the controversy before us. Nordic contends that this silence, together with the sentence which follows

("*The insured* shall have the right to renew the policy at this premium" (emphasis added)), should be read as a requirement that the insurer notify *all* "insured" of its intention to renew, not merely, as in section 4712 and 4713, the "named insured."

This interpretation, it contends, follows both from a literal reading of the statute's language and from a comparison with sections 4712 and 4713. These sections were enacted as part of the same legislative package with section 4715, Pub. Act No. 265 (1986), and both require that 45-day notice of cancellation or nonrenewal be sent to the "named insured." The court, Nordic contends, should give effect to the Vermont legislature's choice of different language in section 4715, and not "rewrite" the statute to obliterate this distinction.

Thus, Nordic contends, as an "insured" under the policy, it had the "right to renew the policy" guaranteed by section 4715. Since American sent notice of intent to renew only to Vermont Sprinkler and not to Nordic, Nordic contends, it was denied the opportunity to exercise that right. Had it known that the policy was about to lapse and that American did not intend to pay the renewal premium, it argues, it would have demanded return of the vehicle and thus would have avoided liability for the ensuing accident. Since it was not informed, it contends, the policy never properly terminated, but instead continued in effect on February 10, 1988, the date of the accident. *See id.* § 4715(b) ("An insurer not complying with subsection (a) ... shall grant its insured renewal coverage at the rate or premium in effect under the expiring or expired policy ... for 45 days ...").

Given section 4715's silence on whom must be notified, we look to the statute as a whole to construe the section's meaning. *Mabee v. Mabee,* 159 Vt. 282, 284, 617 A.2d 162, 163–64 (1992). We conclude that Nordic's interpretation of the statute fails for several reasons.[2]

---

**2.** We do not agree with one rationale on which the district court relied in granting summary judgment. That is its conclusion that § 4715 is inapplicable to renewal of policies in light of its provision that it applies only to policies "to which section 4711 of this title applies." The

district court concluded that, since § 4711 governs cancellation of policies rather than renewal, § 4715 could not be read to apply to issues of renewal or nonrenewal. Such a reading, however, would render § 4715 a nullity. We conclude that the reference in § 4715 to § 4711 is intend-

First, Nordic misconstrues the role of section 4715 within the subchapter. The section does not, as Nordic contends, convey a generalized "right to renew" a policy. Rather, section 4715 concerns the procedure for renewal. The right that it conveys is not a general "right to renewal," but merely the right to have *advance notice of one's new premium.* This appears from the express language of the statute. The section requires an insurer to "confirm in writing at least 45 days prior to expiration its intention to renew the policy and the premium at which the policy is to be renewed." 8 V.S.A. § 4715(a). Once such notice is given, "[t]he insured shall have the right to renew the policy *at this premium." Id.* (emphasis added). If the insurer fails to provide such notice, the insurer "shall grant its insured renewal coverage at the rate or premium in effect under the expiring or expired policy ... for 45 days ...." *Id.* § 4715(b).[3]

Thus, section 4715 is clearly intended to protect an insured from a *change in its premium,* not from termination of the policy. The procedure governing termination by nonrenewal is set out in section 4713 ("Notice of nonrenewal"). This section requires merely that the insurer provide forty-five days' advance notice of its intent not to renew *to the named insured. Id.* § 4713. Even this notice is not required "in case of nonpayment of premium." *Id.* Thus, *no notice of any sort* is required before an insurer may refuse to renew a policy on the ground of nonpayment.[4] We do not read section 4715(b), as Nordic apparently does, as somehow overriding the provisions of section 4713 concerning nonpayment and requiring the insurer to continue coverage for 45 days *without receiv-*

*ing payment.* Since neither Nordic nor Vermont Sprinkler made any payment to renew the policy, American properly terminated the policy pursuant to section 4713.

Even if section 4715 could somehow be construed as a 45–day notice requirement for nonrenewal, which we conclude it cannot, Nordic's contention that notice was required to be sent to it as an "insured" is meritless. We do not think that the Vermont legislature, by using the phrase "the insured" rather than "the named insured" in section 4715, intended to *expand* the class of parties to whom insurers owe a notice obligation beyond the class identified in sections 4712 and 4713.[5] Both these sections—the only sections in the subchapter which address the question of to whom notice should be sent—require only that notices of cancellation and nonrenewal be sent to the "named insured." Nordic has offered no reason why the Vermont legislature would choose to require that notice of an insurer's intention to renew—an event far less disruptive of the contractual relationship than nonrenewal or cancellation—should have to be sent to additional insureds.

To read this intention into the statute's silence would, additionally, run counter to the industry understanding—that is, that a notice of willingness to renew should be sent to the named insured, who ordinarily is responsible for payment. *See* 5 George J. Couch, *Cyclopedia of Insurance Law* § 30:142 (2d ed. 1984) ("Where notice as to premiums or assessments is required, it should be given to the person or persons obligated to pay them"). That understanding is borne out by the facts of this case: The endorsement add-

---

ed only to describe the *type* of policy to which § 4715 applies, *i.e.,* "commercial risk insurance as defined in this chapter but excluding farm risks." 8 V.S.A. § 4711.

**3.** This is a penalty that American paid. American had neglected to send notice of intention to renew to Vermont Sprinkler 45 days in advance of the expiration date of October 3, 1987. Instead, it states that, due to a computer glitch, it overlooked this expiration date, and, as a result, did not send the required notice until November 25. Accordingly, American did not terminate Vermont Sprinkler's policy until more than 45 days after that date, on January 23, 1988.

**4.** By way of comparison, an insurer must give fifteen days notice before *cancelling* a policy for nonpayment. *Id.* § 4712(a).

**5.** We do not accept Nordic's additional contention that, since its name is on the policy, it should be considered a "named insured." In the absence of any indication that the Vermont courts would depart from the "plain meaning" of "named insured," we decline to stretch that phrase's meaning to encompass a party that is listed on a policy as an "additional insured."

ing Nordic to the policy specifically relieved Nordic of any obligation to pay the premium.

▮ Thus, we conclude for the reasons set out above that American had no statutory obligation to notify Nordic of its intention to renew the policy, and thus its termination of the policy did not violate section 4715.[6]

## II. *The Notice Requirement of 23 V.S.A. § 804: Notice to the Commissioner of Motor Vehicles*

Nordic contends additionally that the policy continued in effect because American failed to notify the Vermont Commissioner of Motor Vehicles when it terminated the policy. Nordic contends that American was obligated to do so by Vermont's Motor Vehicle Financial Responsibility Law, V.S.A. tit. 23, ch. 11 (1987 & Supp.1994), which makes certain automobile insurance policies "noncancellable except after 15 days' notice to the commissioner." 23 V.S.A. § 804(a) (Supp. 1994). The district court rejected this contention. It concluded, first, that section 804's notice requirement governs only *cancellation,* not expiration, of policies, and, second, that in any case Nordic properly notified the Commissioner. We are required to disagree with both conclusions of the district court. We conclude that the 15–day notice requirement of section 804(a) applies whenever a policy is terminated, whether by cancellation, expiration, or non-renewal. We also conclude that issues of material fact remain regarding whether American properly notified the Commissioner.

### A. *The Meaning of "Noncancellable" Under Section 804*

The Financial Responsibility Law requires all owners and operators of motor vehicles to carry automobile liability insurance or to post a bond or evidence of self-insurance. 23 V.S.A. § 800. In addition, it requires individuals who have been convicted of drunk driving and various other offenses, as John Morin was ("convicted drivers"), to file proof

of financial responsibility in the amount specified by statute, in the form of a bond or insurance policy, with the Commissioner. *Id.* §§ 801(a)(1), 804. A convicted driver who fails to furnish such proof (a "financial-responsibility policy") when required will have his or her license suspended. *Id.* § 802. Additionally, a convicted driver's license will be suspended on the date that his or her insurance policy expires or is terminated. *Id.* § 803. *See generally State v. Mohr,* 146 Vt. 193, 499 A.2d 769 (1985); *Liberty Mut. Ins. Co. v. Cleveland,* 127 Vt. 99, 241 A.2d 60 (1968); *Farm Bureau Mut. Auto. Ins. Co. v. Violano,* 123 F.2d 692 (2d Cir.1941), *cert. denied,* 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942); *Wright v. Malloy,* 373 F.Supp. 1011 (D.Vt.), *aff'd,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974); *Miller v. Malloy,* 343 F.Supp. 46 (D.Vt.1972); *McNamara v. Malloy,* 337 F.Supp. 732 (D.Vt.1971).

In the case before us, John Morin, as a result of his DWI conviction, was required to file proof of financial responsibility in order to avoid suspension of his license. American filed a Form SR–22 (a Financial Responsibility Insurance Certificate) with the Commissioner on his behalf on October 8, 1986. (American filed a second SR–22 on April 1, 1987, for reasons that we need not consider here.) Nordic contends that since the policy, upon which Morin depended for his license, was "noncancellable except after 15 days' notice to the commissioner," pursuant to section 804, its termination by American without such notice was void. American responds that the section on its face only regulates *cancellation* of policies, and does not bar policies from expiring and not being renewed.

Section 804 on its face provides little guidance on the matter. It provides, in pertinent part:

§ 804. **Method of proof**

(a) Such proof of financial responsibility shall be furnished as shall be satisfactory to the commissioner and may be evidence

---

6. Nordic does not contend that American had any contractual obligation to notify Nordic, and whether Vermont Sprinkler had a contractual duty to notify Nordic, or whether the responsibility lay with Nordic to ensure that its leased

vehicles remained insured, is a matter between Vermont Sprinkler and Nordic. We note, however, that Nordic had a copy of the declarations page, which provided Nordic with notice of the expiration date of its policy.

of the insuring of such person against public liability and property damage ... provided *the policy of insurance shall be non-cancellable except after 15 days' notice to the commissioner....* An insurance company or surety company issuing such policy or bond shall immediately furnish, for filing with the commissioner, a satisfactory certificate certifying that such policy or bond has been issued....

(b) *An insurance or surety company shall bear responsibility for its errors,* including failure to file in a timely manner, in connection with the filing of the certificate referred to in subsection (a) of this section. All costs and expenses incurred by insureds and the commissioner of motor vehicles as a consequence of the failure to file a properly executed certificate shall be paid by the insurance or surety company.

.    .    .    .    .

*Id.* § 804 (emphasis added).

It is unclear from the text of the statute whether "noncancellable" should be given its "plain and commonly accepted use" of "not terminable by any means," as Nordic contends, *see Maurice Callahan & Sons, Inc. v. Armstrong,* 125 Vt. 213, 216, 214 A.2d 70, 74 (1965) (words in a statute without definition must be given their plain and commonly accepted meaning), or whether it should be read more narrowly, as American urges, so as to require notice only when an insurer actively *cancels* a policy but not when it merely allows it to expire at the end of its term.

American's narrow reading comports with current industry usage. "Cancellation" is a term of art in the insurance industry, meaning "the termination of existing policy coverage within the policy period." 1 Rowland H. Long, *The Law of Liability Insurance* § 4A.12 at 4A–34 (1994). Nonrenewal, in contrast, "may merely be the insurer's exer-

cise of its right not to extend another contract to the insured." *Id.*

■  Nordic points out in response that we have no evidence that the Vermont legislature intended this "modern" technical distinction when it enacted section 804 in 1927. Vt. Acts of 1927, No. 81, § 2. Absent evidence to the contrary, Nordic contends, we must presume the legislature intended to use the term according to its commonly accepted meaning at the time. *See In re Graziani,* 156 Vt. 278, 282, 591 A.2d 91, 94 (1991) (Vermont Supreme Court does not ordinarily assume that words are used in a more limited sense than their plain meaning); *Town of Bristol v. United States,* 315 F.Supp. 908, 910 (D.Vt.1970).[7]

Since the plain meaning of section 804 at the time of its enactment is unclear, we look for clarification to the purpose of Vermont's financial responsibility statute as a whole. *Mabee v. Mabee,* 159 Vt. 282, 284, 617 A.2d 162, 163–64 (1992). That purpose is clear. The law "exists to reduce the imposition of financial disaster on the general public that may be injured through the negligence or recklessness of financially insecure and uninsured motor vehicle operators." *Miller v. Malloy,* 343 F.Supp. 46, 51 (D.Vt.1972). In furtherance of this purpose, the statute requires convicted and other high-risk drivers to demonstrate to the Commissioner their ability to satisfy any future claims that might arise should they be involved in accidents for which they are liable. *See Wright v. Malloy,* 373 F.Supp. 1011 (D.Vt.), *aff'd,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974); *McNamara v. Malloy,* 337 F.Supp. 732 (D.Vt.1971). The means by which convicted drivers may prove their financial responsibility, and thus avoid suspension of their licenses, are spelled out by section 804.

*Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 787–88, 101 S.Ct. 2142, 2150–51, 68 L.Ed.2d 612 (1981). Where sections of a statute have been amended but certain provisions have been left unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact.

---

**7.** We find meritless American's response that, since the statute has been amended several times (most recently in 1987), although without changing the term "noncancellable," we must accord the term its modern meaning rather than the meaning that the original drafters intended in 1927. We will not presume that the legislature intended to change the meaning of a statute in the absence of clear evidence of such intent. *St.*

If the means chosen is an automobile insurance policy, section 804(a) requires that the insurance company file with the Commissioner "a satisfactory certificate certifying that such policy ... has been issued." 23 V.S.A. § 804(a). This is done by filing Form SR–22 (the "Financial Responsibility Insurance Certificate") on which the insurer certifies that it has issued a motor vehicle liability policy as required by the financial responsibility laws and that the policy will continue "until cancelled or terminated in accordance with the financial responsibility laws and regulations of this State."

Section 804(a) provides that such a liability policy "shall be noncancellable except after 15 days' notice to the commissioner"—a provision clearly intended to allow the Commissioner time to send the driver a notice indicating that the license will be suspended as of the date that the policy "expires or is terminated," as section 803 requires. Notice of termination is given by filing Form SR–26 ("Financial Responsibility Notice of Cancellation or Termination").

In light of the general purpose and the mechanics of this statutory scheme, we cannot believe that the Vermont legislature intended "noncancellable" to apply only to pre-end-of-term cancellations and not to policies expiring at the end of their terms. Such an interpretation would be inconsistent with section 803, which requires that "any person required to furnish proof of financial responsibility shall have his license ... suspended ... on the date that the insurance *expires or is terminated.*" *Id.* § 803 (emphasis added). It would make little sense to suspend a convicted driver's license on the date that his or her policy lapsed and not also require the insurer to send fifteen days' notice to the Commissioner, as the insurer is required to do before cancelling a policy prior to its expiration date. Such an interpretation would leave a gaping hole in Vermont's scheme of protection against uninsured, high-risk motorists.

One might counter, perhaps, that there is less need to forewarn the Commissioner of expiring insurance policies than to warn of policies cancelled before their time. Perhaps, this reasoning goes, the Vermont legislature intended that the Commissioner would have records of the scheduled expiration dates of convicted drivers' policies, and thus would have no need for advance warning from insurers. Such supposition, however, is not only unsupported by evidence and policy considerations but also runs counter to the DMV's practice. It is appropriate to look to such agency interpretation in construing a statute's textual ambiguities, as part of the authority given to an implementing agency is the power to give reasonable content to those ambiguities. *Department of Treasury v. Federal Labor Relations Auth.,* 494 U.S. 922 (1990).

Examination of DMV forms SR–22 and SR–26, with which the DMV implements the financial responsibility law, reveals the DMV's understanding that a financial-responsibility policy does not terminate *in any way* absent notice by the insurer. The SR–26 form is captioned "Financial Responsibility Notice of Cancellation *or Termination*" and states that the insurance company signatory "hereby gives notice that its Certificate ... filed on behalf of the named insured, is cancelled *or terminated* as of the effective date stated above." AAMVA Uniform Financial Responsibility Form SR–26 (emphasis added). The financial responsibility insurance certificate (the SR–22) provides, similarly, "This certification is effective from *(date )* and continues until cancelled *or terminated* in accordance with the financial responsibility laws and regulations of this State." AAMVA Uniform Financial Responsibility Form SR–22 (emphasis added). Most significantly, the SR–22 does not provide a blank space for the policy's expiration date, and American provided no such date on the SR–22 forms that it filed for John Morin.[8]

■ Thus, a ruling that section 804's notice requirement applies only to policies can-

---

**8.** We see no reason, however, why an insurance company should not be able to note a policy's expiration date on the SR–22 form it files with the Commissioner, and no reason why the Commissioner should not treat such notification as satisfying section 804's 15–day notice requirement. We assume that this, in fact, is the Commissioner's existing practice.

celled prior to their expiration date could leave the DMV without notice of thousands of expiring financial-responsibility policies, and thus could leave Vermont drivers and pedestrians unprotected, in contravention of the statute's policy, against uninsured, high-risk drivers who, like Morin, failed to renew their policies. The more reasonable conclusion, and our holding, is that section 804 prohibits termination of financial-responsibility policies by any means, whether cancellation, expiration, or nonrenewal, without fifteen days' notice to the Commissioner.

## B. *American's Notice to the Commissioner*

American contends, and the district court agreed, that even if section 804 governed termination of the Vermont Sprinkler policy, American did in fact comply with that section's notice requirement, and no material factual issues precluded summary judgment. We disagree. We think Nordic raised a material issue of fact as to American's compliance with section 804. Although Nordic raises several factual issues on appeal, we address only one, as it is sufficient by itself to preclude summary judgment.

In support of its contention that it provided the required notice, American submitted with its summary judgment motion a photocopy of an SR–26 form dated 1/10/87 (apparently a typographical error, as 1/10/88 was intended), indicating the "[e]ffective date of cancellation or termination" as January 23, 1988. It submitted as well a sworn statement, not purported to be made on the basis of personal knowledge, that the form "was actually mailed to the Department of Motor Vehicles on 1–10–88." *See* Plaintiff's Answers to Defendant's Third Interrogatories and Requests to Produce, Answer to Interrogatory No. 2. In response, Nordic submitted an affidavit by a DMV records custodian stating that the DMV never received the

January 1988 SR–26 form and that accordingly "an active financial responsibility filing was present on behalf of John Morin on February 10, 1988." Affidavit of Chauncey A. Liese, 13.

We conclude that Nordic's affidavit creates an issue of material fact which precludes summary judgment. Section 804 does not specify what constitutes "notice to the Commissioner." The rule in Vermont is that, absent specific statutory guidance, "[w]hen a letter, properly addressed, is mailed there is a presumption of its receipt in due course." *Mary Fletcher Hosp. v. City of Barre*, 117 Vt. 430, 431, 94 A.2d 226, 228 (1953); *Town of Barnet v. Town of Norton*, 90 Vt. 544, 550, 99 A. 238 (1916). This presumption may be rebutted by evidence that the intended recipient did not actually receive the mailed notice; when such evidence is introduced, the presumption of notice disappears. *Rocque v. Cooperative Fire Ins. Ass'n*, 140 Vt. 321, 326, 438 A.2d 383, 386 (1981); *Estey v. Leveille*, 119 Vt. 438, 439, 128 A.2d 319, 320 (1957). Assuming, without deciding, that American's statement that it mailed the SR–26 form was sufficient to create a presumption of notice, *see Estey*, 119 Vt. at 439, 128 A.2d at 386 (assuming without deciding that testimony of official that he "sent" a notice was sufficient to show that it was mailed), this presumption was rebutted by the statement of the DMV custodian that the DMV did not receive the form. Thus, summary judgment was precluded on the issue of whether American provided the DMV with notice.[9]

## CONCLUSION

For the foregoing reasons, we conclude that section 804's notice requirement governs American's termination of its Vermont Sprinkler policy and that material factual issues regarding American's provision of notice to the Commissioner preclude summary judg-

9. We find no merit in an additional contention by American—that even if the policy continued as a result of American's failure to notify the DMV, it continued only with respect to John Morin and not with respect to other drivers, including Maurice Morin, who was driving the Toyota pickup when the accident at issue occurred. American's argument reflects an erroneous reading of § 804.

Section 804 provides that, in cases in which proof of financial responsibility is satisfied by an insurance policy, "*such policy of insurance shall be noncancellable* except after 15 days' notice to the commissioner." 23 V.S.A. § 804(a) (emphasis added). Thus, under the section's plain language, the *policy* is non-cancellable, not its coverage of a specific individual.

ment. Accordingly, we reverse the judgment and remand for a trial on this issue.

PIERCE, Senior Circuit Judge, dissenting:

Vermont's statutory requirements concerning cancellation, nonrenewal and renewal of commercial risk insurance are set forth at 8 V.S.A. § 4711 *et seq.* The question before the Court is whether 8 V.S.A. § 4715(a) requires an insurer to give a named additional insured notice of its right to renew. The majority holds that § 4715(a) does not impose such a duty. I respectfully dissent.

This issue is one of first impression under Vermont law., Our role is therefore to carefully predict how Vermont's highest court would resolve this matter. *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir.1994). In making this determination, we are free to consider all of the resources to which that court could look, including decisions of other jurisdictions on the same or analogous issues. *Leon's Bakery, Inc. v. Grinnell Corp.,* 990 F.2d 44, 48 (2d Cir.1993). Our primary objective is to give effect to the intent of the Vermont legislature. *State v. Papazoni,* 159 Vt. 578, 580, 622 A.2d 501, 503 (1993).

Section 4715(a) requires an insurer to "confirm in writing at least 45 days prior to expiration its intention to renew [a policy of commercial risk insurance] and the premium at which the policy is to be renewed." 8 V.S.A. § 4715(a). It further provides that "[t]he insured shall have the right to renew the policy at this premium." [1] *Id.*

In interpreting § 4715(a), we first look to the plain meaning of the words of the statute, since it is presumed that the language shows the intent of the legislature. *Papazoni,* 159 Vt. at 580, 622 A.2d at 503. Indeed, Vermont has abandoned giving effect to plain meaning only in "narrow and particular circumstances," *Dykstra v. Property Valuation & Review Div.,* 156 Vt. 215, 218, 591 A.2d 63, 65 (1991), because it is presumed that the legislature "was aware of the words it used and their meaning," *Papazoni,* 159 Vt. at 580, 622 A.2d at 503. However, if doubts exist or if § 4715(a) is ambiguous, we discern the legislative intent from " 'a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law.' " *Langrock v. Department of Taxes,* 139 Vt. 108, 110, 423 A.2d 838, 839 (1980) (per curiam) (quoting *Holbrook Grocery Co. v. Commissioner of Taxes,* 115 Vt. 275, 278–79, 57 A.2d 118, 120 (1948)). As a general proposition, notice requirements in insurance cases are "strictly construed, necessitating literal compliance on the part of the insurer, with any ambiguities being interpreted in favor of the insured." *State Farm Mut. Auto. Ins. Co. v. Matthews,* 74 A.D.2d 875, 426 N.Y.S.2d 30, 31 (App.Div.1980); *see also* 14A John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 8162, at 209–10 (Rev. ed. 1985).

Section 4715(a), on its face, states that "the insured" shall have the "right to renew" at a specified premium. *See* 8 V.S.A. § 4715(a). It requires written confirmation of the insurer's intention to so renew, as well as confirmation of the renewal premium. *Id.* We are faced with the question of to *whom* advance notice must be given; more specifically, we must decide whether a named additional insured also qualifies as "the insured" so that it is entitled to notice of its right to renew at the specified premium. Since the statute does not define "the insured," this language requires interpretation which, in turn, must be consistent with the purposes of the statute.

In my opinion, the Vermont legislature's use of "the insured" in § 4715(a) evidences an intent to grant the right of renewal and its required notice to *all* "insureds" expressly named in the policy, as opposed to limiting such rights to the party specifically designated as the "named insured." I view this as the better course and the one more likely to

---

[1]. The consequence in Vermont for failure to comply with 8 V.S.A. § 4715(a) is set forth at 8 V.S.A. § 4715(b), which requires the insurer to "grant its insured renewal coverage at the rate or premium in effect under the expiring or expired policy or at rates lawfully in effect on the expiration date ... for 45 days after the insurer confirms renewal coverage and premium." 8 V.S.A. § 4715(b).

be adopted by Vermont's highest court for the reasons which follow.

First, it is telling that the Vermont legislature elected to use the language "the insured" in § 4715(a), rather than "named insured" as is used in the cancellation and nonrenewal statutes. *Compare id.* (renewal) *with id.* at § 4712 (cancellation) *and id.* at § 4713 (nonrenewal). It is well established in our Circuit that "a construction ascribing to two separate statutory provisions the same meaning and scope is disfavored." *United States v. Yip,* 930 F.2d 142, 148 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991). *Accord Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship."); *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972) (per curiam) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). I therefore refrain from ascribing to the language in § 4715(a) the same meaning as the words used in §§ 4712 and 4713.

Second, cases from other states interpreting the language "the insured" have held that a legislature's use of such language requires that any requisite notice be given to *all* "insureds" under a policy, including "additional insureds." *See Lease Car of Am., Inc. v. Rahn,* 419 Mich. 48, 347 N.W.2d 444 (1984) (per curiam) (in a factually similar case, the Michigan Supreme Court ruled that a statute requiring notice of cancellation to "the insured" required the insurer to notify each party who qualified as an "insured" under the policy, which it found included "additional insureds"); *Haft v. Charter Oak Fire Ins.*

*Co.,* 262 Ill.App.3d 933, 200 Ill.Dec. 504, 635 N.E.2d 843 (1994) (an Illinois court held that a statute requiring notice of cancellation to "the insured" was not limited to the "named insured," but applied to anyone who was insured under the policy). Although these cases are not binding in Vermont, they are certainly persuasive authority on this issue.

Third, I do not view it as unreasonable that the Vermont legislature would require notice solely to the "named insured" in cases involving cancellation or nonrenewal, and to "the insured"—interpreted to include a named additional insured—in instances of renewal. It is evident that the legislative intent behind notice statutes is to provide an insured with a reasonable opportunity to maintain continuous coverage, if desired. *See, e.g., Strickland v. Motors Ins. Corp.,* 970 F.2d 132, 137 (5th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *Omar v. St. Paul Fire & Marine Ins. Co.,* 175 Ill.App.3d 77, 82, 124 Ill.Dec. 705, 707, 529 N.E.2d 686, 688 (1988). Where the insurer unilaterally decides that it will cancel or not renew a policy, as in cases of cancellation or nonrenewal, it must furnish appropriate notice to the named insured in sufficient time for it to obtain coverage elsewhere. The decision as to continuation of coverage rests with the *insurer.* Once the insurer has decided to discontinue coverage, the notified named insured no longer has any control over maintaining its coverage with that particular insurer. With regard to renewal, on the other hand, the decision whether to continue coverage ultimately rests with the *insured.*[2] The insured may choose to simply allow the policy to lapse by nonpayment of the premium. *See Boman v. State Farm Mut. Auto. Ins. Co.,* 505 So.2d 445, 451 (Fla.Dist.Ct.App.) (recognizing that public policy supports the insured's right to cancel a policy merely by nonpayment of the premium), *review denied,*

---

**2.** In the event that the *insured* elects not to renew the policy by nonpayment of the required premium, the policy lapses by its own terms. *See, e.g., Lopez v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 239 N.J.Super. 13, 16–17, 570 A.2d 994, 995 (App.Div.) ("where an offer to renew ... is made by the insurer ... and the offer is not accepted by timely payment of the premium, the

policy lapses on the expiration date"), *certification denied,* 122 N.J. 131, 584 A.2d 206 (1990); 18 George J. Couch, *Cyclopedia of Insurance Law* § 68:11, at 14 (Rev.2d ed. 1983) ("Even where notice is required for nonrenewal, there may be no duty to notify where the insured fails to pay the renewal premium after receiving a bill for such premium.").

509 So.2d 1119 (Fla.1987). Absent notice to an insured of its right to renew, the right of renewal granted by § 4715(a) would have no meaning. Thus, I do not view it as inconsistent that the three sections provide for different notice requirements.

Fourth, it seems clear that this more inclusive construction of § 4715(a) is consistent with the spirit and purposes of notice statutes, since requiring that *all* insureds named in a policy are informed of their rights would tend to prevent inadvertent lapses in coverage. *See, e.g., Rahn,* 419 Mich. at 54, 347 N.W.2d at 446–47 ("The obvious objective of [the] statute is to make certain that all of those who are insured under a policy are afforded a period of time, ... either to satisfy whatever concerns have prompted cancellation and thus revive the policy or to obtain other insurance, or simply to order their affairs so that the risks of operating without insurance will not have to be run. That objective cannot be achieved if the insurer, pursuant to policy language, need only notify a designated insured...."); *Omar,* 175 Ill. App.3d at 82, 124 Ill.Dec. at 707, 529 N.E.2d at 688. This interpretation likewise serves the interest of the public at-large. *See, e.g., National Auto. & Casualty Ins. Co. v. California Casualty Ins. Co.,* 139 Cal.App.3d 336, 340, 188 Cal.Rptr. 670, 672 (1983) ("Public policy certainly favors a system under which motorists will not be operating their vehicles without the benefit of public liability coverage."); *United Farm Bureau Mut. Ins. Co. v. Adams,* 145 Ind.App. 516, 519, 251 N.E.2d 696, 698 (1969) ("It is for the benefit of every driver and passenger on our roads today, as well as ourselves, that we carry liability insurance."). The very existence of the subject Vermont statutes implies that continuation of coverage is favored in Vermont.

Fifth, the appellant in this case is identified in the endorsement by name and address. Even assuming that the majority's interpretation of § 4715(a) is correct, I submit that the appellant here—a *named* additional insured—is a "named insured" because this insured is actually *named* in the policy. *See generally* Note, *Recognizing the Unique Status of Additional Named Insureds,* 53 Fordham L.Rev. 117, 139 (1984) (advancing an argument that additional named insureds should be treated as named insureds for the purpose of receiving advance notice of cancellation); *cf. Canedy v. Liberty Mut. Ins. Co.,* 853 F.Supp. 123, 125 (D.Vt.1994) (Billings, *J.*) (under Vermont law, an automobile rental customer who purchased liability insurance coverage when agreeing to rent an automobile from a rental company was found to be a "named insured" for purposes of the policy). In a case where an insurer has knowledge of the name and address of an additional insured, it is reasonable to require that the insurer notify such party of its rights or of the insurer's intentions with respect to the policy. Such a requirement would not impose a heavy burden on the insurer given the widespread use of computer technology in the insurance industry. *See Barbara Corp. v. Bob Maneely Ins. Agency,* 197 N.J.Super. 339, 346, 484 A.2d 1292, 1295 (1984) (noting that notice obligations on insurers are not heavy burdens due to the existence of computers). To be sure, this certainly would be a lesser burden on the insurer who would simply have to mail out an additional notice, than it would be on the insured which might inadvertently lose its coverage.

Finally, the endorsement identifies the appellant's interest as the lessor. Some states have required insurers to notify additional insureds of their intentions regarding a policy when the insurer, as in this case, is *aware* of the actual ownership *interest* of the additional insured with respect to the insured property. *See generally* 8B John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 5014, at 456 (Rev. ed. 1981) (footnote omitted) ("[W]here it is known that there are multiple parties in interest, notice should be given to all."). For instance, in *Hansen v. U.S.A.A. Casualty Ins. Co.,* 206 Neb. 147, 156, 291 N.W.2d 715, 720 (1980), the Nebraska Supreme Court ruled that where an insurer has knowledge that there are multiple owners of an insured motor vehicle, though not all are shown as "named insureds," the company may not cancel the policy, either at the request of a named insured or at the company's initiative, until notice is given to all persons known to have an ownership interest in the vehicle in enough time to afford them a reasonable

opportunity to obtain other insurance. The court noted that to hold less would be to ignore the realities of life since "[f]ew owners of motor vehicles concern themselves with whether they are shown upon the policy as a 'named insured' as long as they believe they have coverage." *Id. See also Safeco Ins. Co. of Am. v. Green,* 260 Md. 411, 417, 272 A.2d 383, 386 (1971); *Government Employees Ins. Co. v. Employers Commercial Union Ins. Co.,* 88 Misc.2d 132, 387 N.Y.S.2d 52, 54 (Sup.Ct.1976), *aff'd,* 62 A.D.2d 123, 404 N.Y.S.2d 652 (1978).[3] The endorsement in the present case indicates that the insurer was actually aware of the appellant's interest as the lessor. I believe that the spirit of § 4715(a) is promoted by requiring notice to the lessor in such an instance.

In sum, I conclude that given the circumstances of this case, the better course and the one more likely to be adopted by Vermont's highest court, is an interpretation of 8 V.S.A. § 4715(a) that imposes a duty upon an insurer to notify a named additional insured of its right to renew. Accordingly, I would reverse and remand this matter to the district court for application of the statute in a manner consistent with this dissent. In view of my position on this threshold issue, I will not address the other question that has been decided by the majority.

---

**3.** Although these cases involve cancellation rather than renewal, their discussion of notice and to whom notice should be given is equally persuasive in the renewal context.