Jane MUELLER, Executrix of the Vincent R. Mueller, and Jane Mueller, Catherine Mueller, Christine Mueller, Thomas Mueller, Mark Mueller, the survivors of Vincent R. Mueller, Plaintiffs,

v.

The COUNTY OF WESTCHESTER, Glenna Lund, individually and as a member of the Westchester County Police, John Does & Jane Does, individually and as members of The Westchester County Police, the City of Yonkers, Empress Ambulance Service, Inc., Robert Figueroa and Kenny Figueroa, Defendants.

94 Civ. 8229 (JSR).

United States District Court, S.D. New York.

Oct. 24, 1996.

**358**

Bleakley Plah & Schmidt, by Robert Meade, White Plains, NY.

Marilyn J. Slaatten, County Attorney by William Martin, White Plains, NY.

Pilkington & Leggett, P.C., by Steven Balson–Cohen, White Plains, NY.

Richard M. O'Keefe, by Richard O'Keefe, White Plains, NY.

## MEMORANDUM ORDER

RAKOFF, District Judge.

This action, which presupposes among other things a constitutional right to first aid, is currently before the Court on defendants' motions for summary judgment. Finding no basis in law or policy for plaintiffs' creative constructions, the Court grants judgment to defendants.

## PLAINTIFFS' CASE

Drawing all reasonable inferences in favor of plaintiffs from the admissible evidence here presented, see *American Casualty Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir.1994), a jury could reasonably find the following. On August 19, 1993, plaintiff Vincent R. Mueller was the victim of a hit-and-run accident in Tibbetts Brook Park in the City of Yonkers. The driver of the vehicle was an off-duty police officer, Robert Figueroa. A few minutes after the accident, Edward Sullivan, a County of Westchester employee assigned to Tibbetts Brook Park, spotted Mueller lying on the roadway, bloodied and injured, but apparently still alive. Sullivan went to a park office to summon aid, then returned to the accident scene a few moments later with another park employee, Ralph Beradis, the park night watchman. A third park employee, Charles Barone, a summertime Special Park Ranger, put in a call to the Westchester County Department of Public Safety for a patrol car and ambulance.

Before any ambulance arrived, four off-duty police officers—on their way home from the same all-day party in the park that the departed driver, Robert Figueroa, had been attending—stopped to investigate. Westchester County Police Officer Amy Lopez and her husband, Jose A. Lopez, a Sergeant with the New York City Transit Police, both felt in vain for any pulse in Mueller's neck. Using Park Ranger Barone's car radio, Police Sergeant Maria Meliti called Westchester County Police Headquarters and described the scene as a Signal 23, which means an "apparent DOA," or dead on arrival. By this time, a crowd was forming and off-duty Police Sergeant Glenna Lunn displayed her badge and took over crowd control. Lunn declared the area a crime scene, not allowing anyone to approach the victim. Believing Mueller was already dead, none of the police officers attempted any kind of first aid.

■ Shortly thereafter, an ambulance from Empress Ambulance Service arrived on the scene, manned by Emergency Medical Technicians Robert Gurliacci and Richard Greer. The technicians examined Mueller and concluded that he was, indeed, dead.[1] Subsequently, however, Mueller's autopsy report was reviewed by plaintiffs' forensic expert, Dr. David Boyd, who opined that Mueller died, not from his impact-related injuries, but because he choked on his tongue, and that had Officer Lopez checked and cleared Mueller's obstructed air passage, Mueller could have been resuscitated. Affidavit of David R. Boyd, sworn to July 12, 1996, at ¶ 6.

---

1. Notwithstanding the technicians' sworn deposition testimony that they adequately examined Mueller, plaintiffs allege that, in actuality, the technicians were barred access by the police and never examined Mueller at all. But in the absence of material admissible evidence to support this allegation, it cannot be considered on a motion for summary judgment. *See* Discussion, *infra.*

It is uncontroverted that none of the four police officers who stopped at and took control of the accident scene ever checked Mr. Mueller's mouth to determine whether his airway was obstructed.

## DISCUSSION

■■■ In addition to various causes of action under New York State law, the plaintiffs, consisting of the estate and survivors of Mr. Mueller, allege no fewer than eight causes of action under 42 U.S.C. § 1983 for supposed violations of Mueller's constitutional rights. But the first five of these claims, which variously allege failures of the police officers at the scene to properly administer first aid and failures of Westchester County to train them to do so, all effectively premise a constitutional right to first aid from police officers at the scene of an accident. Plaintiffs offer no authority for this premised "right," and such roughly analogous precedents as exist are to the contrary. *Cf. De-Shaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (state has no constitutional duty to protect child from beatings by parent). While the police officers may arguably be liable under state law for negligence, negligence does not metamorphose into a § 1983 claim simply because the defendant is a state actor. *Daniels v. Williams*, 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). Moreover, it would hardly comport with sound public policy if every accident scene to which a police officer responded could potentially frame a federal lawsuit. Accordingly, the Court declines to recognize a constitutional right to first aid.

■■■ The sixth § 1983 claim alleges that officers of the defendant Westchester County Police Department impeded the proper providing of medical assistance by the Empress Ambulance Service medical technicians. Quite aside from other deficiencies, this claim lacks an adequate evidentiary basis. As noted above, the technicians testified at their depositions that they conducted an adequate physical examination of Mr. Mueller without interference, and concluded that he was dead. Gurliacci Dep. at 51, 62, 65, 68, 87–88; Greer Dep. at 99–100, 194. In opposition, plaintiffs offer only the deposition testimony of plaintiff Catherine Mueller that technician Greer had previously told her that the technicians had not been allowed to touch the body. C. Mueller Dep. at 95. But quite aside from Greer's testimony to the contrary, *supra*, Catherine Mueller's testimony about what Greer supposedly told her is patently inadmissible hearsay that cannot carry plaintiff's burden under Fed.R.Civ.P. 56(e).[2]

■■■ The seventh cause of action under § 1983 is asserted against Empress Ambulance and alleges that the supposed failure of its technicians properly to examine and treat Mr. Mueller deprived him of constitutionally protected rights. Here, again, the plaintiffs have failed not only to establish the existence of the supposed constitutional right on which they purport to ground the claim but also to adduce admissible evidence in its support. Indeed, even assuming the supposed Greer "admission" excluded from the sixth cause of action, *supra*, might arguably not be hearsay with respect to this seventh cause of action where Empress Ambulance is the defendant, on its face the statement attributed to Greer would still not be probative of liability for, on the contrary, it effectively exonerates Empress Ambulance by placing all blame entirely on the Westchester County police officers. Likewise, plaintiffs' forensic expert, while claiming that Officer Lopez could have cleared Mr. Mueller's air passages and thereby resuscitated him, notably does not opine that resuscitation would still have been possible by the time the Empress Ambulance technicians arrived. *See* Boyd Aff. ¶ 6. Thus, plaintiffs have failed to create a genu-

---

2. Given the opportunity at oral argument to submit additional briefing on their claim that this testimony should be received as an admission by a party-opponent under Fed.R.Evid. 801(d)(2), plaintiffs responded with a letter brief that, in derogation of the Court's order, largely regurgitated plaintiffs' claims on the merits. In any case, the argument is misplaced. Even assuming

arguendo that Greer's alleged statement could be treated as an admission of his principal, Empress Ambulance, it could still not be introduced against the County of Westchester (the only defendant in the Sixth Cause of Action), with which Empress Ambulance had only a contractual relationship.

**360**

ine factual issue as to whether Empress Ambulance caused any of the harm alleged.

As for the eighth § 1983 cause of action, it is entirely derivative of the other claims, simply alleging that the preceding claims are being asserted on behalf of all of the plaintiffs.

Accordingly, summary judgment is granted as to all the claims asserted under federal law. Furthermore, plaintiffs' cross-motion for leave to file an amended complaint is denied, since the allegations they seek to add would not alter the legal analysis here given. Finally the Court declines to maintain pendent jurisdiction over the state law cases of action. Accordingly, the entire action is hereby dismissed.

Clerk to enter judgment.