### In re PAYROLL EXPRESS CORPORATION, et al., Debtors.

**John S. PEREIRA, Esq., as Chapter 11 Trustee of the Estate of Payroll Express Corporation, et al., Plaintiff,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Federal Insurance Company, Chubb Group Of Insurance Companies, and Angus John Roberts, an Underwriter at Lloyd's London, on behalf of himself and all other Lloyd's Underwriters subscribing to Insurance Policy Nos. C92163400F and C92163500F, et al., Defendants.**

### No. 95 Civ. 4385(SAS).

United States District Court, S.D. New York.

Aug. 6, 1997.

Robert M. Horkovich, Adam Reeves, Catherine Flanders, Anderson, Kill & Olick, P.C., New York City, for Plaintiff John S. Pereira.

William R. Mait, Michael C. Simmons, Mait, Wang & Simmons, New York City, for Defendants Federal Insurance Company and Chubb Group of Insurance Companies.

Arthur N. Lambert, Alan N. Goldberg, Lambert, Weiss & Pisano, New York City, for Defendant Aetna Casualty & Surety Company.

James M. McCullough, III, Sedgwick, Detert, Moran & Arnold, New York City, for Defendant London Excess Underwriters.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendants Federal Insurance Company and Chubb Group of Companies move for summary judgment dismissing the claims against Federal contained in Plaintiff John S. Pereira's conformed amended complaint. For the reasons stated below, that motion is granted.

## I.  BACKGROUND

Plaintiff John S. Pereira ("the Trustee") is the bankruptcy trustee of Payroll Express Corp. and Payroll Express Corp. of New York (jointly "Payroll"). Plaintiff seeks coverage under various employee dishonesty and commercial crime insurance policies purchased from defendants, including Crime Insurance Policy No. 80585761–B (the "Federal Policy") issued by Defendants Federal Insurance Company and Chubb Group of Companies (jointly "Federal").

The Federal Policy became effective on February 7, 1986. *See* Affidavit of Kent B. Shelley, Underwriter for Chubb & Sons, Inc., dated May 9, 1997, ("Shelley Aff.") Ex. 1. The following provisions of the Federal Policy are relevant to this motion:

2.1  EXCLUSIONS

Coverage under this Section of this policy does not apply to:

(H) loss unless reported and proved in accordance with Section 4 .5 hereof;

(I) loss unless discovered and written notice given to the Company [Federal] within (1) sixty days following the termination of this policy in its entirety or (2) one year following such termination if the termination results from the voluntary liquidation or voluntary dissolution of the first named Insured [Payroll]; or

(J) loss sustained by any Insured herein unless discovered and written notice thereof given to the Company within sixty days following termination of this policy as to such insured; or

(K) loss under any Insuring Clause which is terminated in its entirety unless discovered and written notice thereof given to the Company within sixty days following such termination. . . .

4.5  NOTICE—PROOF—LEGAL  PROCEEDINGS

Upon knowledge or discovery by a proprietor, partner or officer of any insured loss or of an occurrence which may become a loss, written notice shall be given at the earliest practicable moment, and in no event later than sixty days after such discovery. Within four months after such discovery the Insured shall furnish to the

Company affirmative proof of loss with full particulars. Legal proceedings for the recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss, except that any legal proceedings to recover hereunder on account of any judgment against the Insured or any of the Insured's banks of deposit in any suit referred to in Insuring Clause 4, or to recover any such expenses paid in any such suit shall be begun within two years from the date upon which the judgment in such suit shall become final. . . .

### 4.8 OPTIONAL LONGER DISCOVERY PERIOD

At any time prior to the termination of this policy in its entirety for any reason other than termination as the result of the voluntary liquidation or dissolution of the first named Insured, the Insured may give written notice to the Company that it desires an extension of the period of discovery of loss under this policy from sixty days to one year and shall pay an additional premium for such extension. . . .

### 6.2 TERMINATION OF POLICY OR INSURING CLAUSE

This policy shall terminate in its entirety:

(A) thirty days after the receipt by the Insured of a written notice of termination from the Company;

(B) upon the receipt by the Company of a written notice of termination from the Insured . . .

whichever first occurs. . . .

Endorsements No. 5 and 33

It is further understood and agreed that no change in or cancellation of this bond, whether by or at the request of the Insured or by the Company shall take effect prior to the expiration of forty five (45) days after notice by registered mail of such change or cancellation of this bond has been received by the office of the Department of Finance of the City of New York [Endorsement No. 5 and] the New York City Transit Authority [Endorsement No. 33].

*Id.*

By letter of December 6, 1988, Payroll notified Marshall & Sterling, Inc. ("Marshall

& Sterling") of its intention to "non-renew" the Federal Policy effective February 7, 1989, and asked Marshall & Sterling to secure replacement coverage. *Id.* Ex. 7. Marshall & Sterling forwarded that letter to Federal by facsimile later that day. *Id.* Marshall & Sterling promptly secured replacement coverage for Payroll at Lloyd's, London. Mary Ann Szczypca ("Szczypca"), supervisor of Marshall & Sterling's bond department, informed Payroll President Robert Felzenberg ("Felzenberg") of this by letter dated December 7, 1988:

Per our telephone discussions this date, this is to advise that insurance coverage as outlined in our December 1, 1988 correspondence to you, has been bound by Underwriters at Lloyds to be effective on February 7, 1989 at 12:01 am.

This will replace your Chubb [Federal] coverage, presently written under Policy 80585761B. Chubb will advise if any additional information is required for cancellation.

*Id.* Ex. 11.

Also on December 7, 1988, Felzenberg purportedly wrote to Richard Valcich ("Valcich"), Deputy Executive Director of the City of New York Office of Payroll Administration, and to Patson Agard ("Agard"), Treasurer of the New York City Transit Authority, informing them as follows:

Earlier this week, I instructed Peter Bennett, our crime insurance broker, to advise Chubb/Federal Insurance Company not to renew that policy on February 7, 1989. We have bound identical coverage with Lloyds at London and, of course, our unique non-cancelable crime insurance policy with The Aetna remains in full force and effect. It will take some time for Lloyds to formally deliver the policy, but it is to be identical to the existing Chubb/Federal Insurance Company policy. A copy will be provided to you once we have it. In addition, we have asked Peter to issue, as soon as practical, a new Certificate of Insurance to reflect the change.

*Id.* Exs. 19, 21. Felzenberg has certified mail receipts indicating that he sent this

letter to both Valcich and Agard and that someone from each of these addressees' offices received them and signed return receipt cards on December 12, 1988. *Id.* Exs. 19, 22. However, Agard denies ever receiving this letter and asserts in an affidavit dated May 29, 1997, that Felzenberg's return receipt card, which displays an unknown and barely legible receipt signature and a stamp reading "N.Y.C. Transit Authority, 25 Chapel Street, Brooklyn, New York 11201," is fraudulent. *See* Affidavit of Patson Agard ¶¶ 10–13; Shelley Aff.Ex. 22.

On February 10, 1989, Felzenberg signed a "Cancellation Notice" form prepared by Federal, purportedly cancelling the Federal Policy effective February 7, 1989. *Id.* Ex. 8. From that date forward, neither Payroll nor the New York City Finance Department and Transit Authority (the "City loss payees") paid any premiums to Federal in connection with the Federal Policy. *Id.* ¶ 14.

## II.  LEGAL STANDARD

Under Rule 56(c), summary judgment shall be granted to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A court must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir. 1996). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986); *Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir.1996).

## III.  DISCUSSION

Neither party can dispute that the requirements for cancellation of the Federal Policy set forth in Section 6.2(B) were met by Payroll's transmission of the February 10, 1989, "Cancellation Notice" to Federal. However, Payroll's Trustee contends that the notice requirements for cancellation set forth in Endorsements No. 5 and 33 were not met; or, in the alternative, that they were not met until this bankruptcy litigation began. As a result, the Trustee contends in his conformed amended complaint ("complaint") that the City loss payees were still covered by Federal through June of 1992. *See* Conformed Amended Complaint ("Complaint") ¶ 224. Based on this theory, the Trustee seeks to recover $33,666,080 from Federal. *Id.* ¶ 323.

The Trustee's position has changed dramatically since the filing of the complaint. By affidavit dated May 28, 1997 (nineteen days after the filing of this motion), the Trustee for the first time limited any claims against Federal "to losses that occurred prior to February 7, 1989." Affidavit of John S. Pereira, dated May 28, 1997, ¶ 3. The Trustee now asserts claims on behalf of the two City loss payees for losses which they suffered prior to February 7, 1989, but which they did not discover until June 1992. Under the Trustee's theory of cancellation, the City loss payees' July 20, 1992 notice of loss was timely because it fell within sixty days after the City loss payees' discovery of injury as required by Section 4.5. In short, the Trustee argues that Federal's alleged failure to provide proper notice of cancellation had the effect of extending the City loss payees' time to provide notice of loss by more than three years.[1]  I disagree for three reasons.

First, the Trustee's argument fails because neither Payroll nor the City loss payees paid any premiums after February 7, 1989. Sec-

---

1. Endorsements No. 5 and 33 do not state whether Federal or Payroll, or both, are required to give the City loss payees notice of cancellation. The Trustee argues here that giving notice was Federal's obligation. However, because Payroll initiated the cancellation and because Payroll's president claims he gave the City loss payees

notice, it appears likely that the Trustee is asserting a claim based on his own company's failure to give proper notice. Nonetheless, for the purposes of this motion, I will draw every inference (no matter how unlikely) in favor of the non-movant and assume Federal failed to give notice.

tion 2.1(J) of the Federal Policy explicitly provides that written notice of loss must be given within sixty days of the cancellation date. Section 4.8 allows a one year extension of that deadline upon payment of an additional premium. Section 4.8 establishes that any extension in the discovery notice period exposes Federal to greater risk for which it is entitled to compensation. Here, the Trustee is seeking a benefit for which Payroll never paid.

Second, if the Federal Policy was self-renewing after an ineffective cancellation, the contract would be expected to include language to that effect. When courts have held that an improperly cancelled policy remains in effect for an additional policy period, they have relied upon statutes which explicitly so provide. *See American Casualty Co. of Reading, Pennsylvania v. Nordic Leasing, Inc.,* 42 F.3d 725, 729 (2d Cir.1994) (interpreting 8 Vermont Statutes Annotated § 4715(b)); *Gedan v. The Home Insurance Co.,* 176 A.D.2d 914, 575 N.Y.S.2d 528, 529–30 (2d Dept.1991) (interpreting New York Insurance Law § 3426(e)(5)(C)(i) as applied to a professional liability insurance policy). Moreover, those statutes contemplate the payment of additional premiums in the extension period. *See* 8 V.S.A. § 4715(b); N.Y.Ins.Law § 3426(e)(5)(C)(i). Because the Federal Policy includes no such automatic extension clause and because no premiums were paid after February 7, 1989, Federal's alleged failure to give notice of cancellation does not automatically extend the coverage provided by the policy.[2]

Third, the purpose of requiring notice of cancellation in an insurance contract is to protect the insured from unwitting exposure to liability. The requirement seeks to avoid a situation in which the insurer unilaterally cancels the policy, provides no notice, and leaves the "insured" without coverage. The facts of this case are quite the opposite. Here the insured (Payroll) initiated the cancellation of the policy. The City loss payees, even if they did not have notice, were not damaged by any lack of notice because Payroll acquired identical coverage through Lloyds effective the minute the Federal Policy was cancelled. The spirit of the cancellation notice provision was followed even if the letter of the provision was not.

## IV. CONCLUSION

The Federal Policy was cancelled on February 7, 1989. Payroll and the City loss payees had sixty days beyond that date in which to file any notice of loss. The Trustee's current claim is thus time barred and Federal's motion for summary judgment is granted. The portions of the Trustee's conformed amended complaint asserting claims against Federal Insurance Company and Chubb Group of Companies are dismissed.

SO ORDERED.

---

**2.** New York Insurance Law § 3426(e)(5)(C)(i) only applies to commercial risk, professional liability, and public entity insurance policies, and refers to "late nonrenewal notice," not to failures to provide any notice of nonrenewal. *See* N.Y.Ins.Law § 3426(a)(1), 3426(e)(5)(C)(i). Assuming, *arguendo*, that this section did govern

the Federal Policy, it would not save the Trustee's claim because this section applies *"unless* the insured during the additional required policy period has replaced the coverage," and because the extension contemplated only lasts for one additional policy period, which here is one year. N.Y.Ins.Law § 3426(e)(5)(C)(i) (emphasis added).